**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street, Suite 910
Portland, OR 97204
Telephone: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

**Paul J. Lukas**, MN Bar No. 022084X*
**Brock J. Specht**, MN Bar No. 0388343*
**Steven J. Eiden**, MN Bar No. 0402656*
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
plukas@nka.com
bspecht@nka.com
seiden@nka.com

* *pro hac vice applications forthcoming*

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| STEPHEN NESTLER, individually and as a representative of a class of similarly situated persons,<br><br>                 Plaintiff,<br><br>v.<br><br>SLOY, DAHL & HOLST, LLC, and ALTA TRUST COMPANY<br><br>             Defendants. | Case No. 3:24-cv-00842<br><br>**CLASS ACTION COMPLAINT** |

## NATURE OF THE ACTION

1.      Stephen Nestler ("Plaintiff"), as the representative of the class defined herein brings this action against Sloy, Dahl & Holst, LLC ("SDH") and Alta Trust Company ("Alta Trust") (collectively, "Defendants"), for breaches of their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). As described herein, Defendants have breached their fiduciary duties with respect to their disloyal and imprudent management of the Sloy, Dahl & Holst Collective Investment Trusts ("SDH Funds") in violation of ERISA, to the detriment of participant investors. Plaintiff brings this action to recover the losses caused by Defendants' fiduciary breaches, prevent further mismanagement of the SDH Funds, and obtain equitable and other relief as provided by ERISA.

2.      In 2016, Defendants collaborated to create the SDH Funds, allowing SDH to leverage its relationships with sponsors of ERISA covered plans to introduce these newly formed funds into retirement plan menus across the country. Although not clearly disclosed to investors, the SDH Funds employ a highly concentrated, speculative, and volatile investment strategy that is imprudent and inappropriate as an investment vehicle for retirement savings. The collective investment trusts ("CITs") structure of the funds conveyed a fiduciary duty upon Defendants that is owed directly to the investors of the SDH Funds, including all participants invested in the SDH Funds under ERISA covered plans. As a result of Defendants' breaches of their fiduciary duties, the SDH Funds have been disastrous for participants and have cost them millions of dollars in lost investment earnings to date. Plaintiff brings this action to recover these losses and obtain equitable relief and other appropriate relief as provided by ERISA.

## PRELIMINARY STATEMENT

3.      Launched in 2016, the SDH Funds are a series of target-risk collective investment trusts ("CITs"). CITs are pooled investment vehicles maintained by a bank or trust company available exclusively to retirement plan customers. Like any other legal trust, a CIT is overseen by

2

a trustee who has the authority to manage and operate the trust and its assets in accordance with that trust's Declaration of Trust or other governing document.

4.      A target-risk portfolio, like the SDH Funds, holds a diversified mix of equities, bonds, and other investments to create a particular risk profile.[1] A target-risk series typically includes a handful of target-risk funds that range from "conservative" to "aggressive," with the intention of providing varying risk profiles that align with an investor's risk tolerance. The aggressive funds tend to cater to younger investors and have a higher concentration of stocks. As participants get closer to retirement, they typically select more conservative options that typically offer a higher exposure to less volatile bonds or fixed income investments.

5.      As Defendants acknowledge in both the Declaration of Trust and an investment disclosure for the SDH Funds, they are fiduciaries with respect to the management of the SDH Funds, and their fiduciary duties included the selection and monitoring of investment options and investment managers within the CITs. Alta Trust, as trustee, possesses "all powers granted to fiduciaries by . . . applicable federal law, including ERISA[.]" Sloy, Dahl & Holst, LLC, is a fiduciary and investment manager "as defined in Section 3(38) of ERISA."

6.      SDH, as the investment manager, and Alta Trust as the trustee, breached their fiduciary duties in the management of the SDH Funds and the investment of their underlying holdings. Defendants imprudently invested assets in the SDH Funds in highly risky and excessively expensive investment products, to the detriment of investors. Furthermore, the SDH Funds employ imprudently concentrated investment strategies, devoting a substantial portion of each Fund to a handful of underlying holdings. As a result of these actions, the SDH Funds are predictably highly volatile. Yet Defendants make no mention of a concentrated, risky, and highly volatile investment strategy, misleading investors of the SDH Funds as to the strategy with which their retirement assets will be managed.

---

[1] https://www.investopedia.com/terms/t/target_risk_fund.asp

7.      The SDH Funds also charge excessive fees, in part, because their underlying holdings utilize higher cost share classes than those for which the SDH Funds are otherwise eligible. As fiduciaries, Defendants "cannot ignore the power the trust wields to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected." *Tibble v. Edison Int'l,* 843 F.3d 1187, 1198 (9th Cir. 2016) ("*Tibble II*"). Yet Defendants do just that. For example, according to the factsheets that SDH publishes for the SDH Aggressive Fund, where multiple share classes are available, ***every underlying holding*** utilizes higher cost share classes than what the Fund was eligible for, as of year-end 2022.[2] And this wasteful carelessness is not limited to the Aggressive fund—all five of the SDH Funds invest in unnecessarily costly share classes where less expensive share classes are available. Because the cost of the underlying holdings is passed along to investors, Plaintiff paid more money than necessary for the exact same value due to Defendants' failure to invest the SDH Funds' assets in identical funds at a lower cost. This not only cost participants millions of dollars throughout the class period, but it calls into question Defendants' prudence and skill in crafting these portfolios, and Alta Trust's monitoring of SDH's performance.

8.      In addition to these share class issues, Defendants selected highly volatile and overly risky holdings for the SDH Funds that are inappropriate for retirement plan participants. Based upon numerous risk metrics, the SDH Funds have consistently delivered inferior risk-adjusted returns for participants as a result of their underlying holdings. As an example, the SDH Aggressive Fund returned **0%** to investors over the five-year period ending 2022. A prudent and independent evaluation of the SDH Funds' investment strategy and underlying holdings would have revealed lower cost, better performing options at the beginning of and throughout the class period.

---

[2] This excludes Exchange Traded Funds ("ETFs") because ETFs only offer one class of shares. *See Mutual Funds and Exchange-Traded Funds (ETFs) – A Guide for Investors, Securities and Exchange Commission at* https://www.sec.gov/about/reports-publications/investor-publications/introduction-mutual-funds.

9.      As acknowledged in the Declaration of Trust, Defendants are fiduciaries with respect to the management of the SDH Funds, and their fiduciary duties include the selection and monitoring of investment options and investment managers. *See Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) ("[T]rustees [may] delegate investment authority to a professional advisor *who then becomes a fiduciary with a duty of care and duty of loyalty to the plan*") (emphasis added). These fiduciary duties are the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (citation omitted).  As a result of their actions, Defendants breached their ERISA fiduciary duties to the SDH Funds' investors and participants.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

11.     Venue is proper in this district under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

## PARTIES

### PLAINTIFF

12.     Plaintiff Stephen Nestler resides in Eugene, Oregon. Plaintiff participated in the Pacific Office Automation Capital Accumulation Plan from approximately 2015 through 2023 and is a former participant in the Plan. During Plaintiff's time in the Plan he invested in the Sloy, Dahl & Holst Collective Investment Trusts, including the Sloy, Dahl & Holst Balanced Fund. Plaintiff has been financially injured by Defendants' unlawful conduct, and his account would be worth more today if Defendants had not violated ERISA as described herein.

### DEFENDANTS

### SLOY, DAHL & HOLST, LLC

13.     Defendant Sloy, Dahl & Holst, LLC is an Oregon corporation and registered investment advisor firm based in Portland, Oregon. SDH provides investment advice and portfolio

management services to a range of client types, including individuals, employee benefit plans, trusts, estates, charitable organizations, corporations, investment companies, and banks.

14.     SDH has acted as the investment manager of the SDH Funds approximately since they were formed on December 31, 2015, and began operations in January 2016. The Declaration of Trust provides that any investment manager appointed by Alta Trust would serve as a co-fiduciary to the SDH Funds.

15.     In investment disclosures to participants, SDH identified that all of the assets of the SDH Funds "will be invested according to corresponding strategies and investment models developed and provided by" SDH.

16.     Because SDH is identified in the Declaration of Trust as a fiduciary to every ERISA plan with assets invested in the SDH Funds, SDH qualifies as an "investment manager" under 29 U.S.C. § 1002(38), and is thus a named fiduciary for every ERISA plan with assets invested in the SDH Funds pursuant to 29 U.S.C. § 1102(c)(3). Further, SDH is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority and control with respect to the management or disposition of ERISA plan assets.

*ALTA TRUST COMPANY*

17.     Alta Trust Company is a chartered trust company headquartered in South Dakota with trust service offices located in Colorado and Washington.

18.     Alta Trust is the "Trustee" to the SDH Funds and has been since the Declaration of Trust was originally established on December 31, 2015. According to the Declaration of Trust, Alta Trust has "exclusive" responsibility for managing the assets of the SDH Funds, including the selection and monitoring of investment managers to manage those assets. Although Alta Trust has the authority to (and did) hire an investment manager to render advice regarding the SDH Funds, Alta Trust is responsible for establishing the guidelines, policies, and procedures to be followed by such a manager, and retains ultimate authority over the management of the assets of the SDH Funds.

CLASS ACTION COMPLAINT

19.     Because it is identified in the Declaration of Trust as a fiduciary of each ERISA plan as to the assets invested in the SDH Funds, Alta Trust qualifies as an "investment manager" as defined by 29 U.S.C. § 1002(38), and as such is a named fiduciary pursuant to 29 U.S.C. § 1102(c)(3). Further, Alta Trust is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) because it exercises discretionary authority and control with respect to the management or disposition of ERISA plan assets.

## BACKGROUND

### COLLECTIVE INVESTMENT TRUSTS

20.     The SDH Funds are collective investment trusts established December 31, 2015. A collective investment trust is a pooled investment vehicle maintained by a bank or trust company that is available exclusively to qualified retirement plans exempt from federal income tax including 401(k) plans and certain government plans. CITs are generally organized under a Declaration of Trust.

21.     Like a mutual fund, a CIT is a pooled investment fund managed by an investment professional according to a defined investment objective. While CITs might have many of the same features of mutual funds, unlike mutual funds, CITs are not covered by the Investment Company Act of 1940, and therefore are not subject to the SEC registration, regulatory, and oversight requirements provided by the '40 Act.

22.     Although exempt from the rules and regulations of the '40 Act, trustees of a collective investment trust must adhere to ERISA's fiduciary duties, which are the "highest known to law." *Howard*, 100 F.3d at 1488. The trustee of a CIT is an ERISA fiduciary to the extent that the assets of an ERISA-covered plan are invested in the CIT. DOL Advisory Opinion 2005-09A (May 11, 2005) (explaining that the manager of a CIT "is a fiduciary under section 3(21) of ERISA with respect to ERISA-covered plans for which it serves as a trustee").[3] As the 1974 ERISA

---

[3] *Available at* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/2005-09a

Conference Committee Report explained, "banks, trust companies, and insurance companies [that] maintain pooled investment funds for plans . . . are, of course, plan fiduciaries" who must manage the funds "for the exclusive benefit of participants and beneficiaries." H.R. Report 93-1280, 93rd Congress, 2nd. Sess., at 316, 1974 WL 324168, at *61 (1974). The SEC concurs, explaining that "any person who exercises authority or control respecting the management or disposition of the underlying assets of the collective trust fund . . . and anyone providing investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the plan" who is "subject to all of the duties and liabilities imposed upon plan fiduciaries" by ERISA. Securities and Exchange Commission Division of Investment Management, Staff Guidance and Studies, 1992 WL 12623680, at *96 (1992).

23.    Accordingly, in making investment decisions the trustee of a CIT "and any sub-advisers it may employ" must "manage each CIT under ERISA fiduciary standards to the extent ERISA assets are invested in the CIT."[4] These standards require CIT managers "to act solely in the interests of plan participants and their beneficiaries . . . avoiding conflicts of interest such as making decisions that may be in the [trustee]'s best interests." *Id.* at 10.

24.    Furthermore, the trustee of a CIT has a fiduciary responsibility to ensure that the assets of the CIT are invested in a manner that is consistent with the stated underlying asset allocation, diversification, and objectives.[5] The trustee must "determine the appropriateness of the [underlying] investments to ensure the investments conform to the fund's risk/return profile."[6] Indeed, the Declaration of Trust notes that "the investment discretion of any Investment Manager shall be limited by investment guidelines provided by the Trustee to the Investment Manager."

---

[4] *White Paper on Collective Investment Trusts*, COALITION OF COLLECTIVE INVESTMENT TRUSTS 10 (2015).
[5] *Comptroller's Handbook, Collective Investment Funds*, OFFICE OF THE COMPTROLLER OF THE CURRENCY 13 (May 2014) https://www.occ.treas.gov/publications-and-resources/publications/comptrollers-handbook/files/collective-investment-funds/pub-ch-collective-investment.pdf.
[6] *Id.* at 13.

### TARGET-RISK FUNDS AND THE FUND-OF-FUNDS STRUCTURE

25.    The SDH Funds are target-risk funds. A target-risk fund holds a mix of equities, bonds, and other investments in an attempt to create a particular risk profile. A target-risk series typically includes a handful of target-risk funds ranging from "conservative" to "aggressive," intending to provide participants a risk portfolio that aligns with their risk tolerance. There are five funds included in the SDH Funds target-risk series: the Aggressive Fund, Growth Fund, Balanced Fund, Moderate Fund, and Conservative Fund. The SDH Aggressive Fund is exposed to a higher level of risk and has a target equities allocation between 80% and 100% of the portfolio. As participants age or their risk tolerance changes, they typically select a more conservative option within a target-risk series. The SDH Conservative Fund, for example, has a target equities allocation between 20% and 40% of the portfolio, with the remaining percentage invested in less volatile asset classes like bonds and fixed income investments.

26.    To accomplish the target asset allocation and diversification across numerous asset classes, the vast majority of target-risk funds use a "fund-of-funds" structure, in which the target-risk fund invests its assets in other pooled investment products. The SDH Funds have at all relevant times utilized a fund-of-funds structure, meaning that the CITs' assets are invested in other pooled investment products, which according to the Declaration of Trust can be domestic and foreign securities, mutual funds, exchange traded funds, CITs, hedge funds, private equity funds, venture capital funds, and real estate investment funds, among others.

27.    In selecting investments, the manager of a fund-of-funds portfolio must choose not only which investment manager to hire for a particular portion of the portfolio, but also whether the chosen strategy is available in multiple share classes, and which of those share classes will best serve the interests of investors. Other than a difference in fees, different share classes of the same investment are identical. Where multiple share classes for an underlying holding exist, a prudent manager of a fund-of-funds portfolio will use the share class that charges the lowest costs, as those fees are passed on directly to the investor.

*ERISA FIDUCIARY DUTIES*

28.     ERISA recognizes "that the continued well-being and security of millions of employees and their dependents are directly affected by [retirement] plans." 29 U.S.C. § 1001(a). "The principal object of the statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citation omitted). To protect plan participants, ERISA incorporates the twin fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). These fiduciary duties are the "highest known to law." *Howard*, 100 F.3d at 1488.

29.     The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), with an "eye single" to the interests of such participants and beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "A fiduciary may not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote non-pecuniary benefits or goals." 29 C.F.R. 2550.404a-1(c)(1); *see also* DEP'T OF LABOR, ERISA Adv. Op. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988) ("A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.").

30.     The duty of prudence requires fiduciaries to exercise the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan. 29 U.S.C. § 1104(a)(1)(B). To satisfy the duty of prudence with respect to an investment, a fiduciary must "employ[] appropriate methods to investigate the merits of the investment", *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983), including considering the "the risk of loss and opportunity for gain … associated with the investment … compared to the opportunity for gain … associated with reasonably available alternatives with similar risks." 29 C.F.R. § 2550.404a-1(a)(2)(i).

31.     Furthermore, the duty of prudence requires a fiduciary to "'incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship.'"

*Johnson v. Fujitsu Technology and Business of America, Inc.*, 250 F. Supp. 3d 460, 467 (N.D. Cal. 2017) (quoting *Tibble II*, 843 F.3d at 1197).

### MODERN PORTFOLIO THEORY AS APPLIED TO ERISA

32.     "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts[,]" including the Uniform Prudent Investor Act ("UPIA"). *Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015) ("*Tibble I*"). Modern trust law applies modern portfolio theory ("MPT") in evaluating a fiduciary's "investment choices and overall strategy." *Birse v. CenturyLink, Inc.*, 2019 WL 9467530, at *5 (D. Colo. Oct. 23, 2019); *see also* UPIA § 2(b) ("A trustee's investment and management decisions respecting individual assets must be evaluated not in isolation but in the context of the trust portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the trust."); Restatement (Third) of Trusts § 90(a) (2007) ("This standard requires the exercise of reasonable care, skill, and caution, and is to be applied to investments not in isolation but in the context of the trust portfolio and as a part of an overall investment strategy, which should incorporate risk and return objectives reasonably suitable to the trust.").

33.     This emphasis on risk and return, articulated through modern portfolio theory, "has been adopted in the investment community and, for the purposes of ERISA, by the Department of Labor." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007). Modern portfolio theory prescribes that a portfolio should be built to maximize the amount of return for a given level of risk.[7] Echoing modern portfolio theory, ERISA requires that investments must be constructed "so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C).

---

[7] Modern Portfolio Theory, INVESTOPEDIA,
https://www.investopedia.com/terms/m/modernportfoliotheory.asp.

CLASS ACTION COMPLAINT

## DEFENDANTS' VIOLATIONS OF ERISA

I.    **Defendants Breached Their Fiduciary Duties Managing the SDH Funds**

   A.    **The SDH Funds Are Exceedingly Risky and Highly Volatile**

34.    SDH's lack of experience as an investment manager is displayed through the imprudent monitoring and retention of the SDH Funds' underlying holdings. A prudent investigation of these holdings would have revealed that the SDH Funds have a much higher level of volatility and lower returns than comparable funds in the marketplace. It is apparent from the SDH Funds' continued and excessive risk that Alta Trust—as trustee possessing "the exclusive management and control of the [SDH Funds]"—failed to undertake this investigation.

35.    According to modern portfolio theory, it is commonly understood in financial theory that a fund is considered superior to another fund if it has a lower level of volatility for the same rate of return (i.e., it possesses superior risk-adjusted returns). The SDH Funds, however, are extremely volatile. As shown below, the SDH Aggressive Fund's standard deviation, a common measure of volatility, is consistently and materially higher than that of its stated benchmarks, as well as that of comparable alternative funds that are broadly available in the market and have similar investment objectives. By the end of 2023, SDH Aggressive Fund carried a five-year standard deviation between 62% and 95% higher than other aggressive target-risk alternatives.[8]

| Fund | 2018 (3-Year Std. Dev.) | 2019 (3-Year Std. Dev.) | 2020 (5-Year Std. Dev.) | 2021 (5-Year Std. Dev.) | 2022 (5-Year Std. Dev.) | 2023 (5-Year Std. Dev.) |
|---|---|---|---|---|---|---|
| **Sloy, Dahl & Holst Aggressive – Class 1** | 11.65% | 13.44% | 19.50% | 21.61% | 28.09% | 30.98% |
| *Morningstar Agg Tgt Risk TR USD* | *10.15%* | *10.86%* | *14.91%* | *14.68%* | *17.37%* | *17.77%* |
| *Aggressive Blended Index* | *9.76%* | *10.51%* | *13.88%* | *13.63%* | *16.41%* | *16.72%* |

---

[8] *See infra* ¶ 63 for a description of these alternatives as meaningful benchmarks to the SDH Funds.

| | | | | | | |
|---|---|---|---|---|---|---|
| Allspring Spectrum Aggressive Gr Instl | 11.16% | 11.33% | 13.57% | 13.15% | 15.87% | 15.87% |
| American Funds Growth Portfolio R6 | 11.02% | 11.88% | 15.31% | 15.21% | 18.82% | 19.18% |
| MFS Aggressive Growth Allocation R6 | 10.06% | 10.75% | 14.10% | 14.08% | 17.05% | 17.20% |
| Thrivent Aggressive Allocation S | 10.39% | 11.15% | 14.96% | 14.78% | 17.53% | 17.74% |

36.    Even more concerning, this high volatility persists even within the most conservative SDH Fund, which would hold the most assets of individuals nearing retirement. As the Department of Labor notes, "[e]xtreme volatility can have a devastating impact on participants, especially those approaching retirement[.]"[9] Yet throughout the relevant period, the SDH Conservative Fund experienced as much as 151% (over 2.5 times) more volatility than its self-selected benchmarks.

| Fund | 2018 (3-Year Std. Dev.) | 2019 (3-Year Std. Dev.) | 2020 (5-Year Std. Dev.) | 2021 (5-Year Std. Dev.) | 2022 (5-Year Std. Dev.) | 2023 (5-Year Std. Dev.) |
|---|---|---|---|---|---|---|
| **Sloy, Dahl & Holst Conservative – Class 1** | 4.94% | 5.87% | 9.66% | 10.14% | 13.24% | 15.02% |
| *Morningstar Con Tgt Risk TR USD* | *2.84%* | *2.75%* | *4.07%* | *4.04%* | *6.38%* | *7.44%* |
| Percentage Additional Risk of SDH Conservative Fund vs. Morningstar Con Tgt Risk Index | 73.9% | 113.4% | 137.3% | 151.0% | 107.5% | 101.9% |
| *Conservative Blended Index*[10] | *3.61%* | *3.76%* | *5.11%* | *5.05%* | *7.46%* | *8.50%* |
| Percentage Additional Risk of SDH Conservative Fund vs. Conservative Blended Index | 36.8% | 56.1% | 89.0% | 100.7% | 77.5% | 76.7% |

[9] Compliance Assistance Release No. 2022-01, (Dep't of Labor Mar. 10, 2022).
[10] The Conservative Blended Index created by Defendants is comprised of 70% BarCap US Agg Bond TR, 17% S&P 500, 7% MSCI EAFE NR, 3% Russell 2000 TR, and 3% MSCI EM NR.

37.     These prolonged levels of excessive volatility exhibited by the SDH Funds are irresponsible for retirement savings funds and a predictable byproduct of the investment strategies employed.

38.     The SDH Funds' extreme volatility is particularly important when considering the average tenure of a given employee's participation in a 401(k) plan. Fidelity, the largest recordkeeper of 401(k) assets in the country, determined the average tenure of the 22 million participants on its platform to be 8.5 years.[11] Although saving for retirement is a decades-long venture, this short average tenure within a given 401(k) plan underscores the importance of managing investment risk, as participants do not have the time horizon within a given plan to endure massive swings in their account value.

39.     Yet, as evident from the high level of volatility in the SDH Funds, their investors have been exposed to these harmful swings in account value. To make matters worse, and as will be discussed in more detail below, the SDH Funds' excessive risk-taking is not rewarded by superior risk-adjusted returns, nor are these excessive risks disclosed to investors of the Funds.

**B.      The SDH Funds' Material Riskiness is Due to the Speculative Nature of Their Investment Strategy and Concentration of Underlying Holdings**

40.     To better understand the reason for the extreme volatility of the SDH Funds, a review of their underlying holdings is appropriate. The SDH Funds all share identical core holdings, with additional investments present depending on the Fund. For example, as of 2023, all five SDH Funds held, in part, the same seven underlying funds:

---

[11] *See* Insights on Full Payouts From 401(k) Plans in 2022, FIDELITY INVESTMENTS (Mar. 22, 2023), https://www.ebri.org/docs/default-source/webinars/tenure032223.pdf.

| | Underlying Holdings (2023) | SDH Aggressive | SDH Growth | SDH Balanced | SDH Moderate | SDH Conservative |
|---|---|---|---|---|---|---|
| **Core Holdings** | Baron Partners Retail (BPTRX) | X | X | X | X | X |
| | ARK Innovation ETF (ARKK) | X | X | X | X | X |
| | Virtus Zevenbergen Innovative Growth (SCATX) | X | X | X | X | X |
| | T. Rowe Price Global Technology (PRGTX) | X | X | X | X | X |
| | Baron Global Advantage (BGAFX) | X | X | X | X | X |
| | Hood River Small Cap Growth (HRSRX) | X | X | X | X | X |
| | ARK Genomics ETF (ARKG) | X | X | X | X | X |
| **Additional Holdings** | Columbia Diversified Fixed Income (DIAL) | | X | X | X | X |
| | American Funds Bond Fund of America (RBFGX) | | X | X | X | X |
| | Lord Abbett Short Duration Credit Trust II Class R | | X | X | X | X |
| | Allianz Short Duration High Yield (ASHIX) | | X | X | X | X |
| | Janus Henderson Developed | | X | X | X | X |

CLASS ACTION COMPLAINT

| Underlying Holdings (2023) | SDH Aggressive | SDH Growth | SDH Balanced | SDH Moderate | SDH Conservative |
|---|---|---|---|---|---|
| World Bond (HFAIX) | | | | | |
| Columbia Trust U.S. High Yield Bond A | | | X | X | X |
| PIMCO Income Instl (PIMIX) | | | X | X | X |
| Pioneer Bond Fund Trust Class R1 | | | X | X | X |

41.     These seven core holdings, which, at times, served as the *only* holdings within the SDH Aggressive Fund, are decidedly risky investments that have predictably resulted in the Funds' overall riskiness. Their inclusion within a target-risk fund is itself suspect, but their role as the core holdings across all five SDH Funds is indefensible considering Defendants' disregard for the stated benchmarks for the SDH Funds, particularly in the context of ERISA's mandate to construct portfolios "so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C).

42.     ARK Innovation ETF, for example, is emblematic of the SDH Funds' overall volatility and risk. ARK Innovation serves as the second largest underlying holding in four of the five SDH Funds, accounting for 20% of the SDH Aggressive Fund's assets. Its stated objective is to invest in "equity securities of companies that are relevant to the Fund's investment theme of disruptive innovation."[12] ARK defines "disruptive innovation" as "the introduction of a technologically enabled new product or service that potentially changes the way the world works."[13] This highly speculative strategy has had predictably volatile results. For example, after a 152.82% return in 2020, ARK Innovation ETF returned -23.38% and -66.97% in 2021 and 2022, respectively.

---

[12] *ARKK Overview*, ARK INVEST, https://ark-funds.com/funds/arkk/.
[13] *Id.*

43.     Morningstar Analysts exclaim "ARK Innovation has dubious ability to successfully navigate the challenging territory it explores," and "[t]he strategy's booms and busts have culminated in middling total returns and extreme volatility since its inception."[14] Indeed, Morningstar determined that ARK Innovation ranked number three in "wealth destruction" among mutual funds and ETFs over the last decade, estimating it destroyed $7.1 billion of shareholder wealth during the period.[15] ARK Innovation ETF's inherent risk and volatility has led other ERISA fiduciaries to look elsewhere, as Plaintiff is unaware of any ERISA plan that offers ARK Innovation ETF as a designated investment alternative. Yet Defendants have determined it suitable as a core holding in each SDH Fund, and suitable to hold 20% of SDH Aggressive Fund's retirement assets.

44.     The largest underlying holding within four of the five the SDH Funds, Baron Partners, is another example of Defendants' imprudent management. Accounting for 30% of SDH Aggressive Fund (together with ARK Innovation, a cumulative 50% of the SDH Aggressive Fund), "Baron Partners' extreme single-stock concentration makes it too risky of an option to recommend for most mutual fund investors."[16] This single stock in question is Tesla, which at nearly all times since 2016 has served as Baron Partners' largest holding and now accounts for over 43% of the portfolio.

| Baron Partners | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|
| Allocation to Tesla ($TSLA) | 11.6% | 14.4% | 14.5% | 13.3% | 44.6% | 47.0% | 25.8% | 43.46% |

[14] Dan Weil, *Data Shows Cathie Wood's Ark is One of the Worst Funds*, THESTREET (Feb. 8, 2024), https://www.thestreet.com/investing/stocks/why-cathie-woods-ark-is-one-of-the-worst-fund-groups-in-america.

[15] Suzanne McGee, *Ark Investments Tops Morningstar List of "Wealth-Destroying ETF Issuers"*, REUTERS (Feb. 6, 2024), https://www.reuters.com/business/finance/ark-investments-tops-morningstar-list-wealth-destroying-etf-issuers-report-2024-02-05/.

[16] Baron Partners Retail Fund Analysis, MORNINGSTAR (Jan. 2, 2024), https://www.morningstar.com/funds/xnas/bptrx/analysis.

45.     Such significant concentration in a single stock exposes investors to unnecessary "Single Issuer" risk, which is "the possibility that factors specific to an issuer to which the Fund is exposed will affect the market prices of the issuer's securities and therefore the net asset value of the Fund."[17] As stated in Baron Partners' prospectus, "[d]ue to the size of the Fund's investment in Tesla . . . the net asset value of the Fund will be materially impacted by the price of Tesla stock."[18] Exposure to such risk is antithetical to modern portfolio theory embraced by ERISA and is indicative of Defendants' fiduciary breaches.

46.     Yet again, despite the prolonged nature of this concentrated and speculative investment strategy, nothing in disclosures made to SDH Funds' investors suggests that the Funds will undertake such a risky investment approach.

**C.     The SDH Funds Invest Disproportionately in Risky Asset Classes**

47.     ARK Innovation and Baron Partners are just two examples of an overall strategy employed within the SDH Funds that needlessly seeks exceedingly risky investments. While the Funds do not deviate significantly from industry peers in terms of the magnitude of their allocation to equity securities, which inherently carry more risk than fixed income securities, the types of equity securities in which the Funds invest lead to their overly aggressive risk profiles.

48.     Analysts in the investment industry have developed a set of generally accepted categories to group together investments with similar characteristics that are relevant to investors. Equity securities are categorized by, among other things, market capitalization, style, and domicile. A company's market capitalization signals its size and is generally categorized as large cap, mid cap, or small cap. Large cap stocks are generally more established within the marketplace and subject to less volatility, while small cap stocks tend to have greater return potential while possessing a higher risk profile. Style refers to whether the company is a growth company, value

---

[17] Baron Partners Fund Summary Prospectus (Apr. 28, 2023),
https://www.sec.gov/Archives/edgar/data/1217673/000119312523125842/d439159d497k.htm.
[18] *Id.*

---

company, or core company. Growth companies are believed to have high earnings growth potential at the cost of greater risk and more volatility, while value companies are believed to be undervalued within the marketplace and are considered to have a lower level of risk and volatility. Domicile generally refers to whether the stock is that of a U.S. or non-U.S. company.

49.     The SDH Funds have consistently concentrated their equity allocations to riskier segments of the market (i.e., growth leaning and/or smaller capitalization companies). This deviation from the market, and the SDH Funds' stated benchmarks, has predictably contributed to their extreme volatility.

50.     For example, from 2016 through 2023, the Morningstar Aggressive Target Risk index, which is the benchmark Defendants selected for the SDH Aggressive Fund, has allocated on average approximately 27% of its portfolio to growth securities. In contrast, during this same period, Defendants have allocated an average of 59% of the assets in the SDH Aggressive Fund to growth securities. Since the third quarter of 2020, this has only increased, with the SDH Aggressive Fund averaging a 75% allocation to growth securities. In contrast, the Morningstar Aggressive Target Risk index has remained at a 26% average allocation to growth securities.

51.     Similarly, the SDH Aggressive Fund has remained consistently underweight in large cap equities. From 2016 through 2023, the Morningstar Aggressive Target Risk index averaged approximately 63% of its portfolio in large cap equity securities. During this same period, the allocation to large cap equities in the SDH Aggressive Fund averaged approximately 49% of the portfolio.

52.     This consistent and deliberate overallocation to riskier growth securities and under-allocation to less risky large cap securities in relation to their self-selected benchmarks persists with near uniformity across the five SDH Funds and has predictably contributed to the Fund's excessive volatility and sporadic returns:

| Fund | Average Allocation to Growth Equity Securities (2016-2023) | Average Allocation to Large Cap Equity Securities (2016-2023) |
|---|---|---|
| **SDH Aggressive Fund** | 59.13% | 49.05% |
| *Morningstar Agg Tgt Risk TR USD* | *26.91%* | *62.90%* |
| **SDH Growth Fund** | 50.69% | 41.91% |
| *Morningstar Mod Agg Tgt Risk TR USD* | *22.46%* | *53.32%* |
| **SDH Balanced Fund** | 39.75% | 33.88% |
| *Morningstar Mod Tgt Risk TR USD* | *16.54%* | *40.60%* |
| **SDH Moderate Fund** | 30.73% | 26.57% |
| *Morningstar Mod Con Tgt Risk TR USD* | *11.12%* | *27.94%* |
| **SDH Conservative Fund** | 21.71% | 19.15%[19] |
| *Morningstar Con Tgt Risk TR USD* | *5.11%* | *14.30%* |

53.    Once more, nothing within the SDH Funds' stated investment objectives and strategy suggests a systematic overallocation and concentration in risky asset classes, leaving investors misinformed about how their retirement assets are being managed. For example, investors in the SDH Conservative Fund unknowingly experienced over four times more exposure to risky growth equity securities than its benchmark, as illustrated above.

   **D.    The Risks Incurred by the SDH Funds Contravene Their Stated Investment Objectives and Are Not Disclosed to Investors**

54.    Disclosures to investors within the SDH Funds as well as the Funds' governing Declaration of Trust provide no indication that they engage in such risky and speculative investment strategies that deviate significantly from peer funds in the target-allocation space. To the contrary, the disclosures misleadingly describe funds and strategies that would be typical of the category, rather than the actual, highly atypical approach used by the SDH Trusts. That is, none of the investment objectives below disclose an overexposure to risky asset classes, despite the Funds' systematic allocation to these asset classes as shown above.

---

[19] While the SDH Conservative Fund has averaged a higher allocation to large cap equities than its self-selected benchmark, the SDH Conservative Fund has maintained its overly risky asset allocation by maintaining an average allocation to equity securities nearly double that of its benchmark (36.51% versus its benchmark's 19.89%).

55.     The investment objective of the SDH Conservative Fund states "[t]he fund may be appropriate for investors seeking current income and preservation of capital, and to a lesser extent, capital appreciation. Additional emphasis is placed on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 4% to 6%, net of fees."

56.     The investment objective of the SDH Moderate Fund states "[t]he fund may be appropriate for investors seeking current income and capital preservation of capital with moderate capital appreciation. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 5% to 7%, net of fees."

57.     The investment objective of the SDH Balanced Fund states "[t]he fund may be appropriate for investors seeking total return through moderate capital appreciation, current income and liquidity. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 6% to 8%, net of fees."

58.     The investment objective of the SDH Growth Fund states "[t]he fund may be appropriate for investors seeking total return through capital appreciation, current income, and liquidity. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 7% to 9%, net of fees."

59.     The investment objective of the SDH Aggressive Fund states "[t]he fund may be appropriate for investors seeking primarily capital appreciation. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 8% to 10%, net of fees."

60.     To effectuate these investment objectives, each SDH Fund identifies nearly identical investment strategies with the same rote language. That is, each Fund states "[t]he fund

CLASS ACTION COMPLAINT

will maintain a target allocation that ranges between [X]% and [Y]%[20] in domestic and international equities. The remaining investments will be comprised of allocations to fixed income such as bonds, stable value, and money market funds as well as allocation to alternative investment strategies such as long/short and managed futures. The investment manager will primarily use mutual funds to execute the strategy."

61.     Nowhere in the SDH Funds' investment objectives or investment strategies is the material, systematic, atypical overallocation to risky growth equities and under-allocation to less volatile large cap equities disclosed. Nor do the Funds' investment objectives or investment strategies mention the concentrated nature of the SDH Funds' speculative holdings. Instead, the Funds' investment objectives and investment strategies suggest a focus on "prudent overall diversification" and a mix between current income and capital appreciation. Yet this is misleading, as demonstrated by the above illustration of the concentrated nature of the SDH Funds, including the SDH Aggressive Fund's 50% allocation to Baron Partners and ARK Innovation, and Baron Partners' over 40% allocation to a single stock. As trustee, Alta Trust failed to ensure that "the investment discretion of [SDH] shall be limited by investment guidelines provided by the Trustee to [SDH]." With an investment strategy departing so materially from what is stated in the SDH Funds' disclosures to investors, it is clear that Alta Trust was not prudently reviewing the Funds to ensure they complied with the stated investment guidelines.

   **E.    The Excessive Risks Incurred by the SDH Funds Have Not Been Rewarded by Superior Risk-Adjusted Returns**

62.     The SDH Funds have not been rewarded for the excessive amounts of risk they incur. A common metric used to evaluate a portfolio's risk-adjusted return is the Sharpe ratio.[21]

---

[20] Stated target equity allocations for each SDH Fund are as follows: 20% to 40% for SDH Conservative Fund, 35% to 55% for SDH Moderate Fund, 50% to 70% for SDH Balanced Fund, 65% to 85% for SDH Growth Fund, and 80% to 100% for SDH Aggressive Fund.
[21] Sharpe Ratio, INVESTOPEDIA, https://www.investopedia.com/terms/s/sharperatio.asp.

The Sharpe ratio compares the return of an investment with its risk, helping to explain "whether a portfolio's excess returns are attributable to smart investment decisions or simply luck and risk."[22]

63.    The chart below shows that the SDH Aggressive Fund, which accounts for a majority of the assets in the SDH Funds, had lower risk-adjusted returns since inception than marketplace alternatives and the Fund's self-selected benchmarks: the corresponding Morningstar Target Risk index and a custom blended benchmark. Each marketplace alternative, like the SDH Aggressive Fund, is a target-risk fund, utilizes a fund-of-funds structure, is within the Aggressive Allocation Morningstar Category, invest at least 90% of its assets in equity securities, and share the investment objective of seeking long-term capital growth or appreciation. Any other differences between the funds, including the proportion of assets invested in growth vs. value equities or large cap equities vs. mid cap equities vs. small cap equities, are the result of active management and each respective manager's philosophy in how best to achieve their shared objectives.

| Fund | Since Inception Sharpe Ratio (1/1/16 – 3/31/2024) |
|---|---|
| **Sloy, Dahl & Holst Aggressive – Class 1** | 0.38 |
| *Morningstar Agg Tgt Risk TR USD* | *0.60* |
| *Aggressive Blended Index*[23] | *0.63* |
| Allspring Spectrum Aggressive Gr Instl | 0.66 |
| American Funds Growth Portfolio R68 | 0.66 |
| MFS Aggressive Growth Allocation R6 | 0.64 |
| Thrivent Aggressive Allocation S | 0.62 |

64.    Since its inception, the SDH Aggressive Fund has provided risk-adjusted returns that are between 36% and 42% lower than its self-selected benchmarks and marketplace

---

[22] *Id.*
[23] The Aggressive Blended Index created by Defendants is comprised of 50% S&P 500, 20% MSCI EAFE NR, 10% BarCap US Agg Bond TR, 10% Russell 2000 TR, and 10% MSCI EM NR.

alternatives. In other words, for every additional unit of risk taken by the SDH Aggressive Fund, it is only returning between 58% and 64% of what its self-selected benchmarks and marketplace alternatives are returning.

65.     These inferior risk-adjusted returns persist across all five SDH Funds. Shown below are the since inception Sharpe ratios for each SDH Fund and its corresponding self-selected benchmark indices. Also shown is the percentage difference in Sharpe ratio between each SDH Fund and its respective benchmark indices:

| Fund | Since Inception Sharpe Ratio (1/1/16 – 3/31/2024) | Percentage Difference in SDH Fund Sharpe Ratio vs. Benchmark |
|---|---|---|
| **SDH Aggressive Fund** | 0.38 | n/a |
| *Morningstar Agg Tgt Risk TR USD* | 0.60 | -36.7% |
| *Aggressive Blended Index* | 0.63 | -39.7% |
| **SDH Growth Fund** | 0.40 | n/a |
| *Morningstar Mod Agg Tgt Risk TR USD* | 0.58 | -31.0% |
| *Growth Blended Index*[24] | 0.61 | -34.4% |
| **SDH Balanced Fund** | 0.39 | n/a |
| *Morningstar Mod Tgt Risk TR USD* | 0.54 | -27.8% |
| *Balanced Blended Index*[25] | 0.57 | -31.6% |
| **SDH Moderate Fund** | 0.37 | n/a |
| *Morningstar Mod Con Tgt Risk TR USD* | 0.48 | -22.9% |
| *Moderate Blended Index*[26] | 0.51 | -27.5% |
| **SDH Conservative Fund** | 0.33 | n/a |
| *Morningstar Con Tgt Risk TR USD* | 0.27 | 22.2% |
| *Conservative Blended Index* | 0.40 | -17.5% |

[24] The Growth Blended index created by Defendants is comprised of 42% S&P 500, 25% BarCap US Agg Bond TR USD, 17% MSCI EAFE NR, 8% Russell 2000 TR, and 8% MSCI EM NR.
[25] The Balanced Blended index created by Defendants is comprised of 40% BarCap US Agg Bond TR, 33% S&P 500 TR, 13% MSCI EAFE NR, 7% Russell 2000 TR, and 7% MSCI EM NR.
[26] The Moderate Blended index created by Defendants is comprised of 55% BarCap US Agg Bond TR, 25% S&P 500, 9% MSCI EAFE NR, 5.5% Russell 2000 TR, and 5.5% MSCI EM NR.

66.     The inferior risk-adjusted returns of the SDH Funds are understood by assessing two components of the Sharpe ratio: returns and standard deviation. Return is simply the net gain or loss of the investment over the stated time period, while standard deviation, discussed above, depicts how widely those returns varied over a certain period of time. As previously demonstrated, the SDH Funds exhibit higher standard deviation than their self-selected benchmarks indicating greater variability of returns and, in turn, greater risk. This volatility has not been rewarded by way of superior returns. Instead, the SDH Funds, as illustrated through the SDH Aggressive Fund below, have continuously achieved returns far below their benchmarks and peers, including a bottom percentile ranking over the prior 3-year period:

## Sloy, Dahl & Holst Aggressive Class 1 F00000WY3Y ★

Trailing Returns  [Month End]  [Quarter End]

| Total Return % | 1-Month | 3-Month | YTD | 1-Year | 3-Year | 5-Year |
|---|---|---|---|---|---|---|
| Investment | -1.10 | -0.85 | -0.85 | 18.19 | -11.39 | 6.79 |
| Category | 3.34 | 7.28 | 7.28 | 20.20 | 4.91 | 9.32 |
| Index | 3.03 | 8.23 | 8.23 | 23.98 | 7.63 | 11.65 |
| Quartile Rank | ▤ | ▤ | ▤ | ▤ | ▤ | ▤ |
| Percentile Rank | 100 | 100 | 100 | 82 | 100 | 90 |
| # of Invest. in Cat. | 184 | 184 | 184 | 184 | 177 | 163 |

67.     The predictably excessive volatility of the SDH Funds, as demonstrated through inferior Sharpe ratios, consistently high standard deviations, and highly volatile returns, should have alerted Defendants to the inherent riskiness of the Funds' strategies. A prudent fiduciary would have reassessed SDH's ability to execute its stated strategy and taken action to protect the retirement savings of the Funds' investors from this speculative investment strategy. Instead, Alta Trust, in breach of its fiduciary duties to monitor SDH, sat idly while SDH breached its own fiduciary duties to manage the SDH Funds' investments with skill and prudence.

68.    SDH's insistence on employing a speculative, concentrated, and overly risky investment strategy to the SDH Funds is in breach of their fiduciary duty to manage the SDH Funds with the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan. 29 U.S.C. § 1104(a)(1)(B).

69.    Alta Trust's failure to act is in breach of its fiduciary duty to monitor SDH in its role as investment manager and remove SDH as necessary. *See Tibble I*, 575 U.S. at 529 ("a trustee has a continuing duty to monitor trust investments and remove imprudent ones."); *see also* OFFICE OF THE COMPTROLLER OF THE CURRENCY, COLLECTIVE INVESTMENT FUNDS COMPTROLLER'S HANDBOOK 19 (2014) (stating a trustee must review at least annually to determine "if [collective investment trust] assets are consistent with the fund's plan and investment strategy. The review should focus on the fund's investment policy statement, analyze investment performance, and reaffirm or change the investment policy statement, including asset allocation guidelines. If certain assets are no longer appropriate for the fund, those assets should be replaced consistent with prudent investment practices.").

## II.    Defendants Breached Their Fiduciary Duties by Failing to Utilize the Least Expensive Share Class Available to the SDH Funds

70.    Alta Trust additionally breached its fiduciary duties by again standing idly as SDH failed to leverage the asset base of the SDH Funds to obtain the least expensive share class available to the Funds. "[A] trustee cannot ignore the power a trust wields to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected." *Tibble II*, 843 F.3d at 1198.

71.    As of 2023, the SDH Funds held nine different mutual funds across its suite. Of those nine mutual funds, Alta Trust permitted SDH's failure to utilize the least expensive share class for six:

| SDH Aggressive Underlying Holding | SDH Underlying Ticker | Expense Ratio | Cheapest Ticker | Expense Ratio | Percentage Excess Fee |
|---|---|---|---|---|---|
| Baron Partners Retail | BPTRX | 1.69% | BPTUX | 1.44% | 17.3% |
| Virtus Zevenbergen Innovative Growth I | SCATX | 1.00% | VZGRX | 0.90% | 11.1% |
| T. Rowe Global Technology | PRGTX | 0.95% | PGTIX | 0.79% | 20.3% |
| Baron Global Advantage Retail | BGAFX | 1.16% | BGAIX | 0.91% | 27.5% |
| Hood River Small Cap Growth Inv | HRSRX | 1.32% | HRSIX | 0.99% | 33.3% |
| Allianz Short Duration High Yield Inst | ASHIX | 0.60% | ASHSX | 0.55% | 9.1% |

72.     As discussed, there is no difference between the various share classes of a given mutual fund other than cost. Each share class of a mutual fund invests in the same portfolio of securities and has the same investment objectives and policies. However, these differences in costs between share classes impact their respective performances, with more expensive share classes having a negative impact on returns.

73.     In certain situations, more expensive share classes are utilized to take advantage of revenue sharing paid from the mutual fund company to a plan's recordkeeper or, in this case, Defendants. However, these revenue sharing payments only serve to benefit investors if they are used to defray expenses related to the administration of the trust in question. This is generally accomplished by rebating any revenue sharing payments back to investors of the plan or trust or, as here, the SDH Funds' investors. Yet the governing Declaration of Trust makes no reference to how revenue sharing proceeds are utilized, suggesting they are retained by one or both Defendants as additional compensation.

74.     By failing to utilize the least expensive share class for the underlying holdings of the SDH Funds, and by seemingly retaining any revenue sharing paid by these mutual funds,

Defendants have caused investors to incur needless fees in breach of their duties to act prudently and loyally in the SDH Funds' management.

**PLAINTIFF LACKED KNOWLEDGE OF DEFENDANTS' MISCONDUCT**

75.     Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed. Further, Plaintiff did not have actual knowledge of the specifics of Defendants' decision-making and monitoring processes with respect to the SDH Funds, because this information is solely within possession of Defendants prior to discovery. For the purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

**CLASS ACTION ALLEGATIONS**

76.     29 U.S.C. § 1132(a)(2) authorizes any ERISA plan participant or beneficiary to bring an action to obtain the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks certification of this action as a class action pursuant to this statutory provision and Fed. R. Civ. P. 23.

77.     Plaintiff asserts their claim in Counts I and II on behalf of a class of participants and beneficiaries defined as follows:[27]

> All participants and beneficiaries of an employee benefit plan qualified under Section 401(a) of the Internal Revenue Code invested in any of the Sloy, Dahl & Host Collective Investment Funds at any time on or after May 22, 2018, excluding participants and beneficiaries in governmental plans, as defined by Section 414(d) of the Code.

78.     <u>Numerosity:</u> The Class is so numerous that the joinder of all Class members is impractical. As of the end of 2021, roughly 97 retirement plans had one or more participants invested in the SDH Funds, according to the SDH Funds' Form 5500 filings. Plaintiffs do not

---

[27] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

currently know the exact number of participants that have invested in the SDH Funds during the relevant period, but the number is in the thousands.

79.     <u>Typicality:</u> Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff invested in the SDH Funds and suffered injuries as a result of the mismanagement of those Funds by Defendants.

80.     <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

81.     <u>Commonality:</u> Common questions of law and fact exist to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

a.      Whether Defendants are the fiduciaries of the SDH Funds;

b.      Whether Defendants' fiduciary duties included prudent and loyal management of the underlying investment options held by the SDH Funds;

c.      Whether Defendants breached their fiduciary duties in the management of the SDH Funds, including the selection and monitoring of the SDH Funds' underlying investments;

d.      Whether Defendants breached their fiduciary duties by failing to leverage the size and negotiating power of the SDH Funds to procure the lowest-cost share class of each of the underlying investments of the SDH Funds;

e.      Whether Defendants are additionally or alternatively liable, as co-fiduciaries, for the unlawful conduct described herein pursuant to 29 U.S.C. § 1105;

f.      The proper form of equitable and injunctive relief; and

g.      The proper measure of monetary relief.

82.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

83.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court—such as removal of particular investments within the SDH Funds or removal of any or all of the fiduciaries of the SDH Funds—would be dispositive of non-party participants' interests. The accounting and restoration of participants' plan assets that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other plan participants.

84.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

CLASS ACTION COMPLAINT

## COUNT I
### Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)-(B), (D)

85.    Defendants Sloy, Dahl & Holst, LLC and Alta Trust Company are or were fiduciaries of the SDH Funds, as defined by 29 U.S.C. §§ 1002(21), 1002(38) and/or 1102(a)(1).

86.    29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon Defendants in their management of the investments held by the SDH Funds.

87.    The scope of the fiduciary duties and responsibilities of Defendants includes managing the assets of the SDH Funds for the sole and exclusive benefit of participants and beneficiaries, defraying reasonable expenses of administering the SDH Funds, and acting with the care, skill, diligence, and prudence required by ERISA. Defendants are directly responsible for prudently and loyally selecting appropriate investment options, evaluating and monitoring the SDH Funds' underlying investments on an ongoing basis and removing and replacing those that are no longer appropriate, and taking all necessary steps to ensure that the Funds' assets are invested prudently and in a low-cost manner. This duty includes a "continuing duty to monitor investments and remove imprudent ones[.]" *Tibble I*, 575 U.S. at 530.

88.    As described throughout this Complaint, Defendants failed to employ a prudent and loyal process for selecting, monitoring, and reviewing the underlying investments held by the SDH Funds. Defendants imprudently concentrated the assets of the SDH Funds in highly volatile and underperforming funds, in contravention of the SDH Funds' stated investment objectives and strategies, and despite the availability of countless investments that demonstrated superior risk-adjusted returns. Defendants imprudently and disloyally retained higher-cost share classes of mutual funds for which lower cost versions were available that would have performed better. Furthermore, the retention of these higher-cost share classes inured benefit to Defendants through the retention of revenue sharing payments generated from these mutual funds.

89.    Each of the above-mentioned actions and failures to act described in paragraph 88 and throughout the Complaint demonstrate Defendants' failure to make investment decisions

31

based solely on the merits of each investment and what was in the best interests of participants invested in the SDH Funds. Instead, Defendants' conduct and decisions suggests a disregard for their ERISA fiduciary duties and a desire to drive revenues and profits through the retention of revenue sharing payments. Through these acts and omissions, Defendants failed to discharge their fiduciary duties solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the SDH Funds, in violation of their fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

90.     Each of the above actions and omissions described in paragraph 88 and elsewhere in the Complaint demonstrate that Defendants failed to discharge their duties with the care, sill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a likely capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their fiduciary duties under 29 U.S.C. § 1104(a)(1)(B).

91.     The fiduciary duties outlined by 29 U.S.C. § 1104(a)(1)(A) and (B) were codified as duties of the trustee and the appointed investment manager within the Declaration of Trust. Declaration of Trust §§ 3.06, 3.07. Defendants made similar representations in disclosures related to the SDH Funds, which acknowledge Alta Trust as trustee and SDH as a fiduciary to the SDH Funds and any plan investing in any Fund, pursuant to ERISA § 3(38). Therefore, Defendants' failure to manage the SDH Funds for the exclusive purpose of providing benefits to participants and their beneficiaries and with the care, skill, prudence and diligence that a fiduciary acting in like capacity would have used also constitutes a failure to manage the SDH Funds "in accordance with the documents and instruments governing the plan" in violation of 29 U.S.C. § 1104(a)(1)(D).

92.     Each Defendant is personally liable, and Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), to make good the losses resulting

from the aforementioned breaches, to restore any profits Defendants made through the use of ERISA plan assets, and to disgorge any profits earned as a result of the fiduciary breaches alleged in this Count.

93.     Each Defendant knowingly participated in the breach of one or more of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

**<u>COUNT II</u>**
**Failure to Monitor Fiduciaries**
**29 U.S.C. § 1132**

94.     As alleged above, Alta Trust Company and Sloy, Dahl & Holst, LLC are fiduciaries of the SDH Funds.

95.     Alta Trust Company is responsible for appointing and removing any investment managers of the SDH Funds, including Sloy, Dahl & Holst, LLC. Because Alta Trust had the power to appoint and remove any investment managers of the SDH Funds, it also had a fiduciary duty to monitor the performance of Sloy, Dahl & Holst, LLC as investment manager, and to ensure this appointed fiduciary was performing its fiduciary obligations in compliance with ERISA.

96.     Alta Trust Company breached its fiduciary monitoring duties with respect to Sloy, Dahl & Holst, LLC by, among other things:

a.      Failing to monitor and evaluate the performance of SDH, or have a system in place for doing so, standing idly as the SDH Funds operated in contravention of their stated investment objectives and strategies and suffered substantial losses as a result of the imprudent actions and omissions of SDH;

33

b.    Failing to monitor SDH's fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein;

c.    Failing to remedy or address SDH's conduct in violation of ERISA as outlined herein, to the detriment of SDH Funds' investors and their retirement savings.

97.    Due to the foregoing breaches of the duty to monitor, the SDH Funds and their investors suffered millions of dollars in losses due to excessive fees and lost investment earnings.

98.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Alta Trust Company is liable to restore all losses suffered as a result of their failure to properly monitor the SDH Funds' investment manager. In addition, Alta Trust Company is subject to equitable and other relief as provided by ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stephen Nestler, individually and as representative of the Class defined herein, pray for relief as follows:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel

C.    A declaration that Defendants have breached their fiduciary duties under ERISA;

D.    An order compelling Defendants to personally make good all losses resulting from the breaches of fiduciary duties described above;

E.    An accounting for profits earned by Defendants and a subsequent order requiring Defendants to disgorge all profits earned from, or in respect of, Defendants' breaches of fiduciary duties related to the SDH Funds during the relevant period;

F.      An order granting equitable restitution and other appropriate equitable monetary relief against Defendants, including but not limited to, imposition of a constructive trust on all ERISA plan assets transferred to Defendants as a result of Defendants' unlawful conduct in violation of ERISA or a surcharge against Defendants to prevent their unjust enrichment from unlawful transactions involving the assets of the SDH Funds;

G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate;

H.      An award of pre-judgment interest;

I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine;

J.      An award of such other and further relief as the Court deems equitable and just.

DATED this 23rd day of May, 2024.

By: s/ David F. Sugerman
**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street, Suite 910
Portland, OR 97204
Telephone: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

**Paul J. Lukas**, MN Bar No. 022084X*
**Brock J. Specht**, MN Bar No. 0388343*
**Steven J. Eiden**, MN Bar No. 0402656*
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
plukas@nka.com
bspecht@nka.com

35

seiden@nka.com

*\* pro hac vice applications forthcoming*

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT