**Timothy J. Fransen**, OSB No. 073938
tfransen@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
900 SW Fifth Avenue, 24th Floor
Portland, OR 97204
Telephone: (503) 323-9000

**Richard J. Pearl** (*pro hac vice*)
richard.pearl@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

**Allison S. Egan** (*pro hac vice*)
allison.egan@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700

Attorneys for Defendant Alta Trust Company

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| STEPHEN NESTLER and DERYCK JACKSON, individually and as a representative of a class of similarly situated persons, | Case No.: 3:24-cv-00842-MO |
| Plaintiff, | |
| v. | **DEFENDANT ALTA TRUST COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** |
| SLOY, DAHL & HOLST, LLC and ALTA TRUST COMPANY, | Oral Argument Requested |
| Defendants. | |

Alta Trust Company's Motion to Dismiss

**DEFENDANT ALTA TRUST COMPANY'S MOTION TO DISMISS**

Defendant Alta Trust Company ("Alta") moves to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, because Plaintiffs lacks Article III standing to bring certain claims, and under Federal Rule of Civil Procedure 12(b)(6), because Plaintiffs fail to state a claim upon which relief may be granted. This motion is based on this filing, the accompanying memorandum of law, all accompanying exhibits, the arguments of counsel, submissions by co-defendant Sloy, Dahl & Holst, LLC, and any other matter this Court may properly consider.

In compliance with LR 7-1(a), on November 7, 2024, counsel for Alta conferred with counsel for Plaintiffs through telephone conference. Per LR 7-1(a)(2), the parties discussed each claim, defense, or issue that is the subject of this motion. The parties also discussed the documents that Alta requests that this Court consider on this motion to dismiss. The parties made a good-faith effort to resolve the dispute but were unable to do so, and Plaintiffs oppose all requests made herein.

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................ 1

II.  RELEVANT BACKGROUND ...................................................................... 4

  A.  The SDH Collective Investment Trusts. .................................................. 4

  B.  Summary of Plaintiff's Key Allegations. ................................................. 8

III.  RULES 12(B)(1) AND 12(b)(6) STANDARDS ......................................... 9

IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS MISINTERPRET MODERN PORTFOLIO THEORY. .................................... 10

V.  PLAINTIFFS LACK ARTICLE III OR STATUTORY STANDING TO BRING CERTAIN OF THEIR CLAIMS . ...................................................................... 12

  A.  Plaintiffs Do Not Have Article III Standing to Bring Claims Regarding the SDH Funds In Which They Did Not Invest. ............................................. 12

    1.  Plaintiffs Lack Article III Standing to Bring Claims Regarding "Volatility" Because Volatility did not Cause Plaintiffs any Losses. ........ 14

    2.  Plaintiffs Lack Standing to Bring Claims for Losses to Other Plans. ........ 17

  B.  Count I Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted. ............................................. 18

    1.  Count I Should Be Dismissed Against Alta Because Alta Cannot Be Liable in the First Instance for the Acts and Omissions of Its Appointed Investment Manager, SDH. ....................................................... 18

    2.  Plaintiffs Cannot State a Viable Imprudence Claim by Merely Alleging the SDH Funds Had a Volatile Performance History. ............... 19

      a.  Plaintiffs Fail to Compare the SDH Funds' Volatility to the Volatility of Meaningful Comparators. ......................................... 21

      b.  Plaintiffs Cannot State a Claim by Relying on Hindsight Performance Metrics Observed Over Short Periods of Time. .................................................................................................. 23

      c.  Even If Hindsight Performance Metrics Were Sufficient to State a Claim, Plaintiff Has Not Alleged Any Facts that the SDH Funds Underperformed. ......................................................... 25

    3.  Plaintiffs' Critiques of the SDH Funds' Underlying Allocations Do Not Plausibly Suggest Imprudence. ............................................................ 29

    4.  The SDH Funds' Disclosures Do Not Suggest Imprudent Monitoring and Plaintiffs Do Not Allege Any ERISA Disclosure Violations. ....................................................................................................... 32

VI.  COUNT II SHOULD BE DISMISSED WITH PREJUDICE ....................................... 34

VII.    CONCLUSION................................................................................................... 34

Alta Trust Company's Motion to Dismiss        ii

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Acosta v. Pac. Enters.*,
  950 F.2d 611 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) .......................................17

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
  579 F. Supp. 3d 1133 (N.D. Cal. 2022), *appeal filed*, No. 22-16268 (9th Cir.
  Aug. 22, 2022) .............................................................................................................................21

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
  No. 19-CV-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021) .............................24, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................10, 15

*Beldock v. Microsoft Corp. ("Beldock I")*,
  No. 22-cv-1082, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)......................................15, 34

*Beldock v. Microsoft Corp.*,
  No. C22-1082JLR, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) .........................23, 24, 25

*Bloom v. AllianceBernstein LP*,
  2024 WL 1255708 (S.D.N.Y. March 25, 2024) .......................................................................16

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...................................................................................................10

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
  990 F.3d 173 (2d Cir. 2021)........................................................................................................17

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ....................................................................................................25

*Davis v. Washington Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) ......................................................................................................23

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.*,
  920 F.2d 457 (7th Cir. 1990) ......................................................................................................27

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
  No. 17-CV-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ...................................9

*Dorman v. Charles Schwab Corp.*,
  No. 17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018)....................................33

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)...............................................................................................................3, 10

*Fisher v. Secchitano*,
No. 3:18-CV-1639-JR, 2020 WL 1068873 (D. Or. Feb. 3, 2020), *report and recommendation adopted*, No. 3:18-CV-01639-JR, 2020 WL 1068068 (D. Or. Mar. 5, 2020), *aff'd*, 833 F. App'x 141 (9th Cir. 2021)......................................................4, 28

*Hall v. Capital One Fin, Corp.*,
No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)..........................25

*Henderson ex rel. Henderson v. Shinseki*,
562 U.S. 428 (2011)...........................................................................................................10

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)...........................................................................................................13

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022).....................................................................................................20, 31

*In re Huntington Bancshares Inc. ERISA Litig.*,
620 F. Supp. 2d 842 (S.D. Ohio 2009) ...............................................................................33

*Kirschbaum v. Reliant Energy, Inc.*,
526 F.3d 243 (5th Cir. 2008) .............................................................................................23

*Lauderdale v. NFP Ret., Inc.*,
No. 21-cv-301-JVS, 2022 WL 422831 (C.D. Cal. Feb. 8, 2022) ...........................................19

*In re LinkedIn ERISA Litig.*,
No. 5:20-CV-05704-EJD, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ............10, 12, 13, 15

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024)........................................................................................................12

*Marshall v. Northrop Grumman Corp.*,
No. CV 16-06794 AB, 2017 WL 2930839 (C.D. Cal. Jan. 30, 2017)................................13, 14

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ..............................................................................................22

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ..............................................................................................20

*Moitoso v. FMR LLC*,
451 F. Supp. 3d 189 (D. Mass. 2020) .....................................................................................6

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) ..............................................................................................12

*Parmer v. Land O'Lakes, Inc.*,
    518 F. Supp. 3d 1293 (D. Minn. 2021)....................................................................6

*Pension & Emp. Stock Ownership Plan Admin. Comm. of Cmty. Bancshares, Inc.,
    o/b/o Cmty. Bancshares, Inc. v. Patterson*,
    547 F. Supp. 2d 1230 (N.D. Ala. 2008)................................................................9, 33

*Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2012)..............................................................................20, 31

*Reetz v. Lowe's Cos., Inc.*,
    No. 518CV00075KDBDCK, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021),
    *aff'd sub nom. Reetz v. Aon Hewitt Inv. Consulting, Inc*., 74 F.4th 171 (4th Cir.
    2023) ...........................................................................................................................8

*Saint Vincent Cath. Med. Centers v. Morgan Stanley Inv. Mgmt. Inc.*,
    No. 09-cv-9730 PKC, 2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010), *aff'd sub
    nom. PBGC ex rel. St. Vincent*, 712 F.3d 705 (2d Cir. 2013)................................27

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*,
    343 F.3d 1036 (9th Cir. 2003) ................................................................................15

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .................................................................20, 23, 24

*Smith v. CommonSpirit Health*, CV 20-95-DLB-EBA, 2021 WL 4097052
    (E.D. Ky. Sept. 8, 2021), *aff'd,* 37 F.4th 1160.......................................................23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..........................................................................................10, 12

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................................33

*Stegemann v. Gannett Co., Inc.*,
    970 F.3d 465 (4th Cir. 2020) ....................................................................................7

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ..............................................4, 25, 29, 32

*In re Unisys Sav. Plan Litig.*,
    74 F.3d 420 (3d Cir. 1996).........................................................................................7

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................12

*Wehner v. Genentech, Inc.*,
    No. 20-CV-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021)...........20, 21, 22

*Wehner v. Genentech, Inc.*,
No. 20-CV-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...................................22

*White v. Chevron Corp. ("White II")*,
No. 16-CV-0793-PJH, 2017 WL2352137 (N.D. Cal. May 31, 2017), *aff'd*,
752 F. App'x 453 (9th Cir. 2018) ................................................................................. *passim*

*White v. Chevron Corp. ("White III")*,
752 F. App'x 453 (9th Cir. 2018) ...............................................................................10

*Wise v. Verizon Commc'ns, Inc.*,
600 F.3d 1180 (9th Cir. 2010) ....................................................................................18

**Statutes, Rules & Regulations**

ERISA § 3(38); 29 U.S.C. § 1002(38)...............................................................................6

ERISA § 101; 29 U.S.C. § 1021 ......................................................................................31

ERISA § 104(b); 29 U.S.C. § 1024(b) ..............................................................................32

ERISA § 402(c)(3); 29 U.S.C. § 1102(c)(3)...............................................................6, 18, 19

ERISA § 404(a)(1)(B); 29 U.S.C. § 1104(a)(1)(B) .............................................................19

ERISA § 404(a)(1)(C); 29 U.S.C. § 1104(a)(1)(C) ...........................................................26

ERISA § 405(d)(1); 29 U.S.C. § 1105(d)(1) .....................................................................18

ERISA § 409(a), 29 U.S.C. § 1109(a) ..............................................................................17

ERISA § 502(a)(2); 29 U.S.C. § 1132(a)(2)...................................................................9, 17

ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3).......................................................................9

29 C.F.R. § 2550.404a-5.................................................................................................32

Fed. R. Civ. P. 12(b)(1)............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................................ *passim*

**Other Authorities**

Dan Weil, *Data Shows Cathie Wood's Ark is One of the Worst Funds*,
THESTREET (Feb. 8, 2024),
https://www.thestreet.com/investing/stocks/why-cathie-woods-ark-is-one-of-
the-worst-fund-groups-in-america ...............................................................................30

ERISA-LH 5, 1973 WL 172970 (A.&P.L.H.), 23 .........................................................8, 27

ERISA-LH 9, 1974 WL 186650 (A.&P.L.H.), 48 ................................................................7, 27

https://www.nasdaq.com/market-activity/mutual-fund/sdhacx .......................................................1

Investopedia, *Market Index: Definition, How Indexing Works, Types, and Examples*, https://www.investopedia.com/terms/m/marketindex.asp .....................................22

Investopedia, "S&P 500 Average Return and Historical Performance" at https://www.investopedia.com/ask/answers/042415/what-average-annual-return-sp-500.asp ......................................................................................................29

Modern Portfolio Theory, INVESTOPEDIA, https://www.investopedia.com/terms/m/modernportfoliotheory.asp..................................2, 11

Morningstar, "5 Charts on Big Tech Stocks' Collapse" at https://www.morningstar.com/markets/5-charts-big-tech-stocks-collapse.............................29

U.S. Department of Labor, *Target Date Funds - Tips for ERISA Plan Fiduciaries*, Feb. 2013, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf..............................6, 27

**MEMORANDUM OF LAW IN IN SUPPORT OF ALTA'S MOTION TO DISMISS**

## I.     INTRODUCTION

Plaintiffs' ERISA claims allege that Alta Trust Company ("Alta") breached ERISA's fiduciary duty of prudence in connection with a suite of five collective investment trusts ("CITs"). These CITs, which were managed and monitored by co-defendant Sloy, Dahl & Holst, LLC ("SDH") (the "SDH Funds"), are investments that non-party retirement-plan fiduciaries chose to include as investment options for participants in their respective 401(k) retirement plans.

The principal SDH Fund that Plaintiffs attack, which is the SDH "Aggressive" Fund, started this year at a value of $19.59.[1] On November 12, 2024, it was $23.38 – more than a 19% return. Since May 11, 2022, the Aggressive Fund has earned investors 54% returns. Yet Plaintiffs, using a slew of impressive-sounding metrics and technical terms, allege that the Aggressive Fund, and the four other SDH Funds, were designed so poorly that no prudent ERISA fiduciary would possibly have chosen them for retirement investing.

The gist of Plaintiffs' lawsuit is that the SDH Funds were imprudent because their upward trajectories had short periods of significant gains and significant losses – something Plaintiffs refer to as excessive "volatility" or "risk." Under Plaintiffs' theory of this case, it is not enough to cross the finish line first; if you trail significantly behind at certain points and surge significantly ahead at others, you have lost the race as a matter of law. Relying on "Modern Portfolio Theory" ("MPT"), which Plaintiffs urge this Court to apply, as a matter of law, to ERISA-plan fiduciaries' decisions on investment options, Plaintiffs assert that investments with excessive volatility or risk are either imprudent for retirement plans or must provide *even better*

---

[1] https://www.nasdaq.com/market-activity/mutual-fund/sdhacx

Alta Trust Company's Motion to Dismiss          1

returns to account for that risk. According to Plaintiffs, the fact that the SDH Funds "returns" were consistent with their benchmarks is irrelevant; they want this Court to order that ERISA requires investment professionals to assess "risk-adjusted returns" and seek even better returns because of windows of volatility.

There are multiple problems with Plaintiffs' claims, any of which supports dismissal at the pleading stage.

***First***, this Court should summarily reject the notion that ERISA requires, as a matter of law, that fiduciaries comply with Plaintiffs' interpretation of MPT, which ignores investments' indisputably sufficient returns and instead focuses on "risk-adjusted returns." First Amended Complaint ("FAC") ¶¶ 33, 65-66. Such a theory would open the door to plaintiffs suing ERISA fiduciaries simply because their investments did not increase in value linearly enough for them over time. Furthermore, Plaintiffs are not even interpreting MPT accurately; what MPT actually addresses (assuming it has the force of law in the ERISA context) is diversification of portfolios as a means of reducing overall risk while seeking reasonable returns. MPT does not, as Plaintiffs allege, *require* greater returns as the amount of risk in the portfolio increases.[2] This Court should not accept Plaintiffs' invitation to establish binding investment requirements for ERISA fiduciaries.

***Second***, pursuant to Rule 12(b)(1), Plaintiffs lack standing to bring claims relating to three of the SDH Funds in which neither Plaintiff actually invested. Plaintiffs Stephen Nestler and Deryck Jackson were participants in only one of the plans that offered the SDH Funds, the Pacific Office Automation Capital Accumulation Plan (the "Plan"). Nestler invested only in the

---

[2] Modern Portfolio Theory, INVESTOPEDIA,
https://www.investopedia.com/terms/m/modernportfoliotheory.asp.

Alta Trust Company's Motion to Dismiss        2

"Balanced" Fund and Jackson only in the "Aggressive" Fund. They stand to gain nothing even if this Court were to determine that the other three funds were imprudently managed, and they thus lack standing to bring claims relating to those funds.

*Third*, pursuant to Rule 12(b)(1), Plaintiffs have failed to allege that they suffered any losses because of periods of supposed volatility. Plaintiffs' account values steadily increased over reasonable periods of assessments; the fact that, at one point in time, the account values may have decreased—and increased—significantly does not amount to a loss to Plaintiffs.

*Fourth*, pursuant to 12(b)(1) and ERISA § 502(a), Plaintiffs lack standing to bring claims relating to retirement plans other than the Plan in which they were participants.

*Fifth*, pursuant to 12(b)(6), Plaintiffs' claims against Alta should be dismissed because Alta appointed SDH as the investment manager to make decisions about the SDH Funds' underlying holdings. While Alta has responsibility for the CITs in its role as trustee, Alta has no ERISA fiduciary liability for investment decisions made by a validly appointed investment manager.

*Sixth*, pursuant to Rule 12(b)(6), Plaintiffs have failed to plausibly allege that the SDH Funds performed poorly. The FAC focuses almost exclusively on the "Aggressive" Fund within the suite of five SDH fund, and the allegations do not support any inference of imprudence in managing the Aggressive Fund. The FAC also virtually ignores the Conservative, Moderate, Growth, and Balanced Funds, and Plaintiffs cannot state a claim relating to the other four funds by alleging performance metrics or volatility measures about the Aggressive Fund.

ERISA requires fiduciaries to assess overall returns over an investment's intended time horizon—typically decades, in a retirement plan. This is not a case in which investment options so clearly underperformed against reasonable benchmarks or comparator funds that the Court can

Alta Trust Company's Motion to Dismiss        3

infer imprudence in selecting or managing the investment options. This case is about something fundamentally different. Plaintiffs want this Court to hold, as a matter of law, that ERISA fiduciaries are obligated to avoid ebbs and flows in performance and/or seek *even better* returns simply because an investment has short periods of higher highs and lower lows that ultimately balance out over time. *Id*. ¶¶ 45, 53. Such a theory of liability finds no support in MPT, established ERISA cases, or guidance. For these reasons and as further set forth herein, the Complaint should be dismissed with prejudice.

## II.    RELEVANT BACKGROUND

### A.    The SDH Collective Investment Trusts.

Plaintiffs, participants in the Plan, purport to bring claims on behalf of an unspecified number of unidentified, non-party retirement plans whose fiduciaries chose to include the "SDH Funds" as investment options among menus of options in their plans. Each plan individually made the fiduciary decision to include the SDH Funds in their investment menus for participants, and each plan contracted with Alta to offer their respective participants the choice of investing in the five SDH Funds. FAC ¶ 20. Along with the SDH Funds, Plaintiffs' Plan offered a vast menu of 35 other investment options from which Plaintiffs and other participants could choose. *See* ECF No. 26-14 at 38, 2022 Plan Form 5500 (listing Plan's investment options).[3] The First Amended Complaint alleges nothing about those other options. FAC, *passim*.

---

[3] Alta cites to certain documents that SDH cited in its motion to dismiss the initial complaint and attached to the Declaration of Alexander Reed in Support of SDH's Motion to Dismiss, ECF No. 26 and accompanying exhibits. To reduce the number of documents filed with this Court, Alta has cross-cited to the initial Reed Declaration when Alta cites a document that SDH also cites. This Court may consider on a Rule 12(b)(6) motion facts subject to judicial notice "[that] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1066 (N.D. Cal. 2017). ERISA requires Plaintiffs' Plan to file annual disclosures with the Department of Labor, which are available publicly. *See id*. The accuracy of these disclosures cannot be disputed and courts "routinely" consider them on a motion to dismiss. *See Fisher v. Secchitano*, No. 3:18-CV-1639-

Alta Trust Company's Motion to Dismiss          4

ERISA does not micromanage the types of investment options that 401(k) plans can offer participants (with some exceptions not relevant here). ERISA regulates 401(k) plans largely by regulating the *conduct* of those who make final, discretionary decisions about certain plan and investment matters. ERISA renders these people fiduciaries, and cases, like this one, challenge the *process* the fiduciaries engage in to make investment decisions. In an attempt to give rise to an inference, at the pleading stage, that Alta and SDH acted imprudently with respect to the SDH Funds, Plaintiffs do not actually allege that the SDH Funds underperformed against their benchmarks or reasonable comparators. Plaintiffs instead suggest that Alta and SDH must have acted imprudently because embedded within the SDH Funds—or embedded within investments that themselves were embedded within the SDF Funds—were certain subinvestments that, according to Plaintiffs, were excessively volatile and/or risky. In other words, Plaintiffs are unhappy that the increase in the SDH Funds' value was not a straight shot up, but included periods of what they consider to be material losses and gains *on paper* while on their way to providing sufficient returns to Plaintiffs and all other investors.

Like all collective investment trusts, the SDH Funds are a type of blended investment vehicle with a "fund-of-funds" structure, meaning they invest in other pooled investment vehicles that, in turn, hold a mix of equities, bonds, and other securities. *See* FAC ¶¶ 20-21, 25-26. As the Department of Labor has recognized when addressing a similar type of fund-of-funds structure, it is permissible for 401(k) plans to offer blended investment vehicles that hold a "mix

---

JR, 2020 WL 1068873, at *6 (D. Or. Feb. 3, 2020), *report and recommendation adopted*, No. 3:18-CV-01639-JR, 2020 WL 1068068 (D. Or. Mar. 5, 2020), *aff'd*, 833 F. App'x 141 (9th Cir. 2021) (citing cases).

of stocks, bonds, and other investments[.]"[4] In fact, the DOL has recognized that a suite of blended investment vehicles like CITs generally includes not only "more conservative investments," but also "***more volatile***" investments that "carry greater investment risk."[5] The DOL expects suites of blended investment vehicles to include "more volatile" assets, and even for some investment vehicles to keep "a sizeable investment in more volatile assets, like stocks[.]"[6]

Tellingly, CITs commonly are the subject of 401(k) lawsuits, but for wildly different reasons from those in the instant case. CITs have generally low fees, which makes them exceptionally desirable 401(k) plan investments. *See Parmer v. Land O'Lakes, Inc.,* 518 F. Supp. 3d 1293, 1305 (D. Minn. 2021) (explaining CITs have lower fees than mutual funds). Typically, CITs are cited as the gold-standard 401(k) investment option, and CITs are used by plaintiffs as a measure of comparison against other types of funds that plaintiffs attack. *See Parmer,* 518 F. Supp. 3d at 1305 (alleging CITs were superior investments compared to mutual funds); *Moitoso v. FMR LLC,* 451 F. Supp. 3d 189, 212 (D. Mass. 2020) (same).

CITs are managed by an investment manager in accordance with written investment objectives. FAC ¶ 21. Here, Alta acted as the SDH Funds' trustee, and Alta appointed SDH as an ERISA "investment manager" pursuant to ERISA § 3(38) and ERISA § 402(c)(3). The Complaint acknowledges that SDH was given the authority to "render advice regarding the SDH Funds" and to invest the SDH Funds "according to corresponding strategies and investment models developed and provided by" SDH. *Id*. ¶¶ 14, 18. SDH selected the underlying holdings of

---

[4] U.S. Department of Labor, *Target Date Funds – Tips for ERISA Plan Fiduciaries*, Feb. 2013, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf

[5] *Id.*

[6] *Id.*

Alta Trust Company's Motion to Dismiss          6

the five SDH Funds, which use a "target-risk" strategy, meaning each of the five has its own risk profile with varying degrees of aggressiveness, volatility, and potential returns/losses. *Id*. ¶ 25. The five SDH Funds have names that are consistent with their general approach to investing: Aggressive Fund, Growth Fund, Balanced Fund, Moderate Fund, and Conservative Fund. The most conservative fund targets a lower allocation of equity-centered investments (20-40%) and a higher allocation of bond-centered investments, and the most aggressive fund targets a higher allocation of equity-centered investments (80-100%) and a lower allocation of bond-centered investments. *Id*. The investment strategy and risk profile of each SDH Fund is set forth in the Funds' disclosures, which Plaintiffs cite throughout the FAC. *See* ECF Nos. 26-8 through 26-12. Each plan that includes the SDH Funds as investment options, including Plaintiffs' Plan, knows the investment strategy and risk profile when selecting the SDH Funds as options.  Similarly, each participant, including both Plaintiffs, has access to the investment strategy and risk profile of the SDH Funds before they choose to invest in one or more of them.

Plaintiffs' Plan, like all 401(k) plans, is a defined contribution retirement plan that allows eligible participants to select from among a menu of investments. *See, e.g.*, *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 469 (4th Cir. 2020). In a 401(k) plan, "participants decide how much to contribute to their accounts and how to allocate their assets among an array of investment options selected by [plan fiduciaries]." *Id.* (citations omitted). Consistent with Congress' repeated pronouncements that 401(k) plans should offer participants a "broad range of investments," 401(k) plans offer menus of options that allow participants to personally select investments that match their particular, personal levels of risk tolerance. *See, e.g.*, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir. 1996); ERISA-LH 9, 1974 WL 186650 (A.&P.L.H.), 48 (House Conference Report) (plans should offer a "broad range" of investments); *see also*

Alta Trust Company's Motion to Dismiss          7

ERISA-LH 5, 1973 WL 172970 (A.&P.L.H.), 23 (a "wide range" of investments must be made available to participants); *Reetz v. Lowe's Cos., Inc.*, No. 518CV00075KDBDCK, 2021 WL 4771535, at *50 (W.D.N.C. Oct. 12, 2021) (one of the "key benefits of the more traditional menu of lots of options" is that it "afford[s] participants a range of options allowing them to diversify and align investments to match a particular level of risk tolerance), *aff'd sub nom. Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023). Participants who want conservative, low-risk investments can choose those, while participants who want higher-risk, aggressive options can choose those.

### B.    Summary of Plaintiff's Key Allegations.

Nestler alleges that he invested in the SDH Balanced Fund, while Jackson alleges that he invested in the SDH Aggressive Fund. FAC ¶¶ 11-12. Their principal claim concerns so-called "volatility" of the SDH Funds. Beginning with the assertion that ERISA requires, as a matter of law, fiduciaries to always act in accordance with MPT Plaintiffs allege that, all things being equal, an investment option that is more volatile is less preferable to an investment option that is less volatile. *Id*. ¶ 33. To assess the supposed volatility, the FAC focuses almost exclusively on the SDH Aggressive Fund, which Plaintiffs allege had a materially higher "standard deviation" than that of its benchmarks, meaning its price tended to fluctuate over certain periods more than certain benchmarks and it provided "sporadic" returns. *Id*. ¶ 34. The FAC also refers to other metrics of supposed volatility to make the same basic point.

In an attempt to draw similarities among the five SDH Funds, Plaintiffs allege that they all had the same seven "core" investments that were volatile and risky. *Id*. ¶¶ 39-40. Within those core investments (now three levels deep), Plaintiffs focus on ***two*** of the ***underlying holdings*** of some of the SDH Funds and allege that those underlying holdings themselves were extremely volatile and were too risky for ***any*** ERISA fiduciary to include as a component of any investment

Alta Trust Company's Motion to Dismiss        8

option offered as part of any menu to any ERISA plan. *Id*. ¶¶ 41-44. Plaintiffs then compare the

SDH Funds' volatility to other funds and benchmarks using various volatility metrics.

The FAC does not, however, attempt to compare the five SDH Funds to other

investments in the same general class. In other words, the FAC compares all five of the SDH

Funds to target-risk funds in an *aggressive* category. Moreover, Plaintiffs largely ignore the SDH

Funds' actual returns and instead assert that it was impermissible as a matter of law to include

volatile investments even if those investments performed just fine, or that Defendants should

have ensured higher returns in exchange for the increased volatility. Neither of those claims are

viable under ERISA.

## III.    RULES 12(B)(1) AND 12(b)(6) STANDARDS

In Count I and II, Plaintiffs bring claims of breaches of ERISA's fiduciary duty of

prudence pursuant to ERISA §§ 502(a)(2) and 502(a)(3) and claims for breach of the duty to

monitor SDH's performance. FAC ¶ 97. An ERISA § 502(a)(2) claim requires a plaintiff to

plead and prove: (1) defendant had a fiduciary obligation with respect to the misconduct alleged;

(2) defendant breached the fiduciary obligation; and (3) the breach caused loss to the Plan (or

individual participants' plan accounts). *Pension & Emp. Stock Ownership Plan Admin. Comm. of*

*Cmty. Bancshares, Inc., o/b/o Cmty. Bancshares, Inc. v. Patterson*, 547 F. Supp. 2d 1230, 1238

*(N.D. Ala. 2008)*. An ERISA § 502(a)(3) claim requires a plaintiff to plead and prove that

defendant had a fiduciary obligation with respect to the misconduct alleged, that defendant

breached that fiduciary obligation, and that "appropriate equitable relief" is available to remedy

the breach. *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-

07243-BLF, 2019 WL 6841222, at *3 (N.D. Cal. Dec. 16, 2019)*.

*12(b)(1).*  "Federal courts are courts of limited jurisdiction; they are authorized only to

exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted

Alta Trust Company's Motion to Dismiss       9

thereunder." *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2021 WL 5331448, at \*2 (N.D. Cal. Nov. 16, 2021) (citing *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the existence of Article III standing. *See id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. *Id.*

*12(b)(6).* To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Where there are two possible explanations, only one of which can be true and only one of which results in liability, [a plaintiff] cannot offer allegations that are merely consistent with [his] favored explanation but are also consistent with the alternative explanation." *White v. Chevron Corp. ("White III")*, 752 F. App'x 453, 454 (9th Cir. 2018) (citing *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true [.]" *Id.* (quotations and citation omitted).

In the ERISA context, the Supreme Court has noted that a motion to dismiss is an "important mechanism for weeding out meritless claims," requiring courts to engage in a "careful, context-sensitive scrutiny" of a plaintiff's claims. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS MISINTERPRET MODERN PORTFOLIO THEORY.

Plaintiffs' fundamental theory is that ERISA fiduciaries have an obligation to act in accordance with MPT, and MPT requires, as a matter of law, ERISA fiduciaries to either avoid volatile investments altogether or somehow seek *better-than-reasonable* returns to account for

periods of increased volatility or risk. According to Plaintiffs, it was not enough for the SDH Funds to provide reasonable rates of return; Plaintiffs claim the SDH Funds should have provided better than reasonable returns, because of their supposed volatility and risk, and defendants violated ERISA by failing to chase higher returns to account for volatility or risk.

Plaintiffs' claims should be dismissed with prejudice because MPT, even assuming it applies and a departure from it plausibly suggests a fiduciary breach, does *not* require that investment options *must* provide higher rates of returns in exchange for increased volatility or risk. MPT is an economic theory that focuses on portfolios overall and means of reducing risk while maintaining similar gains through diversification. [7] MPT is a guide to crafting a diversified portfolio, so that all an investors' eggs are not in one basket.

MPT does not preclude aggressive investment options. It does not preclude volatile investment options. As noted above, the DOL has recognized that a suite of blended investment vehicles like CITs generally includes not only "more conservative investments," but also "***more volatile***" investments that "carry greater investment risk."[8] The DOL expects suites of blended investment vehicles to include "more volatile" assets, and even for some investment vehicles to keep "a sizeable investment in more volatile assets, like stocks[.]"[9] Notably, the DOL has not required ERISA fiduciaries to ensure higher returns in exchange for periods of volatility.

In the FAC, Plaintiffs go a step further; they argue that MPT requires ERISA fiduciaries to seek greater returns if investments *within* investments were volatile or risky. *Id.* ¶ 44. For example, Plaintiffs allege that four of the SDH Funds held the Baron Partners Fund, and within

---

[7] Modern Portfolio Theory, INVESTOPEDIA,
https://www.investopedia.com/terms/m/modernportfoliotheory.asp.

[8] *Id.*

[9] *Id.*

the Baron Partners Fund was *an individual security* that was volatile and risky, which Plaintiffs allege is "antithetical to modern portfolio theory." *Id.* That is nonsense. An individually volatile or risky investment option does not, itself, require higher returns, even according to MPT. And the presence of an allegedly risky individual holding within the SDH Funds says nothing about their overall volatility or riskiness, and it certainly does not trigger an obligation to secure greater returns.

Plaintiffs have failed to plead that Alta's decisions diverged from MPT, and assuming that it even has the force of law for ERISA fiduciaries, they have failed to plead violations of ERISA. Their FAC should be dismissed with prejudice.

## V.    PLAINTIFFS LACK ARTICLE III OR STATUTORY STANDING TO BRING CERTAIN OF THEIR CLAIMS.

### A.    Plaintiffs Do Not Have Article III Standing to Bring Claims Regarding the SDH Funds In Which They Did Not Invest.

The "irreducible constitutional minimum" of Article III standing comprises "three elements." *Spokeo, Inc*, 578 U.S. at 338 (citation omitted). A plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citation omitted). "In a class action, this standing inquiry focuses on the class representatives." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). The named plaintiffs "'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *In re LinkedIn*, 2021 WL 5331448, at *3 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).[10]

---

[10] The First Amended Complaint cites Department of Labor Compliance Assistance Release No. 2022-01. FAC ¶ 35, fn. 8. That guidance is no longer meaningful after the Supreme Court's

Plaintiffs lack standing to bring claims relating to the SDH Funds in which they did not invest. The SDH Funds suite consists of five separate funds, each with distinct investment strategies and goals. FAC ¶¶ 4, 25. In addition to the Aggressive and Balanced Funds that Plaintiffs invested in, the SDH Funds suite includes a Growth Fund, Moderate Fund, and Conservative Fund. *Id.* ¶¶ 4, 11-12, 25. In a 401(k) plan, "participants' benefits are 'tied to the value'" of their individual accounts. *In re LinkedIn*, 2021 WL 5331448, at *4. In other words, the value of Plaintiffs' accounts—and the source of any potential damages Plaintiffs could have suffered—is based on the performance of the investment options they selected for their Plan accounts. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("[E]ach beneficiary is entitled to whatever assets are dedicated to his individual account."). Plaintiffs did not suffer any injury if investments they *did not* select may have performed poorly. *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (investment "performance losses" are "sustained by only those who invested in" the allegedly deficient fund). Because of this, courts in the Ninth Circuit and "across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in." *In re LinkedIn*, 2021 WL 5331448, at *4 (collecting cases).

Likely recognizing that they lack standing to bring claims relating to funds in which they did not invest, Plaintiffs assert that all five of the SDH Funds had the same supposed "core" underlying investments that themselves were allegedly too volatile to be included in any ERISA

---

decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). In any event, that guidance was addressing cryptocurrency and "extreme price volatility, which may be due to the many uncertainties associated with valuing these assets, speculative conduct, the amount of fictitious trading reported, widely published incidents of theft and fraud, and other factors." That has no bearing on CITs.

401(k) plan. FAC ¶¶ 39-40. This allegation is an attempt to establish a similar pattern of alleged

misconduct across all five SDH Funds, but it is nothing more than a misdirection. ERISA does

not permit pattern allegations to substitute for standing; Plaintiffs did not invest in the

Conservative, Moderate, or Growth Funds, and therefore cannot assert claims as to them. 2017

WL 2930839, at *8.  Plaintiffs thus lacks Article III standing to challenge the SDH Funds they

did not invest in, and claims relating to those SDH Funds should be dismissed.

### 1. Plaintiffs Lack Article III Standing to Bring Claims Regarding "Volatility" Because Volatility did not Cause Plaintiffs any Losses.

With respect to the SDH Aggressive and Balanced Funds that Plaintiffs allege they

invested in, Plaintiffs still have not established Article III standing because they have not alleged

that any supposed fiduciary breach caused loss to their Plan accounts.

Plaintiffs allege that the Balanced and Aggressive Funds had a volatile performance

history because they had a lower "Sharpe ratio" and "alpha metric" than their benchmarks, FAC.

¶¶ 68-70; [11] and the Balanced and Aggressive Funds invested too heavily in allegedly risky

growth equity securities and two specific, allegedly risky funds: the Baron Partners Fund and the

ARK Innovation ETF. *Id*. ¶¶ 39, 41, 43, 51. But with respect to the actual returns Plaintiffs

realized on the Balanced Fund and Aggressive Fund, Plaintiffs only mention short-term swings

in value, where they assert that, "[i]n their last two quarters within the Plan, Plaintiff Jackson's

investment in the SDH Aggressive Fund lost over 40% of its value—an amount over two times

---

[11] Consistent with their overall approach in the First Amended Complaint, Plaintiffs do not
compare the alpha metric of the Balanced Fund to any comparator or benchmark. *See* FAC 69-
70.

Alta Trust Company's Motion to Dismiss        14

the losses incurred by its self-selected Morningstar Aggressive Target Risk benchmark." FAC ¶ 38.[12]

The alleged volatility or risk during this narrow period did not cause any losses to Plaintiffs' individual accounts over a reasonable period of time, particularly after a reasonable review period when the investments would swing back upwards in value. Such a reasonable review period is what comparable investment options and benchmarks are for, and Plaintiffs have not, and cannot, allege that the SDH Funds underperformed sufficiently comparable investments or even their own benchmarks. To the contrary, the Funds' disclosures, which Plaintiffs cite throughout the FAC, illustrate that Plaintiffs and others who invested in those funds realized indisputably sufficient returns when assessed over reasonable review periods. In fact, since their inception and in the past five years, the Aggressive and Balanced Fund's returns have closely matched or *exceeded* those of their benchmarks. *See* ECF Nos. 26-8, Aggressive Fund Fact Sheet at 1, and 26-9, Balanced Fund Fact Sheet at 1.[13] Plaintiffs do not sufficiently allege losses and thus lack Article III standing. *See Beldock v. Microsoft Corp. ("Beldock I")*, No. 22-cv-1082, 2023 WL 1798171, at *4 (W.D. Wash. Feb. 7, 2023) (dismissing complaint for lack of Article III standing when complaint does not allege the plaintiff's specific investment underperformed, because complaint "is devoid of any allegation that [plaintiff] suffered any concrete injury").

---

[12] The First Amended Complaint also includes baseless predictions that the SDH funds will perform poorly in the future. FAC ¶ 72-74. Plaintiffs do not possess a crystal ball, and their speculation—based on the experience of unrelated funds with widely varying objectives and strategies—regarding the future performance of the SDF funds is not "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

[13] On a Rule 12(b)(1) motion, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *See In re LinkedIn*, 2021 WL 5331448, at *3 (N.D. Cal. Nov. 16, 2021) (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Alta Trust Company's Motion to Dismiss    15

In an attempt to manufacture alleged losses, Plaintiffs rely on MPT, which some courts have referenced when generally assessing 401(k) investment menus. Plaintiffs allege that according to MPT, investors generally expect higher returns in exchange for increased volatility. FAC ¶ 31. Putting aside the fact that Plaintiffs have misinterpreted MPT (as set forth above), ERISA does not recognize a claim for failure to earn *more* than expected simply because a particular portfolio turns out to deviate, over narrow time periods, from the broader indices more than might have been anticipated.

Even if volatility metrics could provide the basis for an ERISA fiduciary breach claim, the comparisons Plaintiffs provide cannot. When discussing the Sharpe Ratio and alpha metric, Plaintiffs compare the volatility of the Aggressive Fund from January 1, 2016 through August 31, 2024 – an eight year, eight month period.  FAC ¶¶ 66-70. There is no year over year comparison, nor the commonly used three-and five-year review period. *Id.* For example, substantial volatility (which is not a basis for an ERISA claim in any event) could have taken place in 2016-17, outside of the class period. The volatility could have been confined to a short period of time, which would not justify any changes in the fund lineup. Plaintiffs' broad brush volatility comparisons provide no information upon wish a prudence claim could be sustained. *See Bloom v. AllianceBernstein LP*, 2024 WL 1255708, at *7 (S.D.N.Y. March 25, 2024) ("Virtually any investment vehicle can be said to underperform its benchmark depending on the time frame that is chosen.").

Finally, the FAC does not contain plausible allegations to suggest that the Balanced, Conservative, Moderate, and Growth funds *overall* were too volatile, or that their returns were adversely affected. The only volatility analysis of an SDH Fund in which Plaintiffs invested that

Alta Trust Company's Motion to Dismiss      16

appears in the FAC relates to the SDH Aggressive Fund.[14] With respect to the other four funds, Plaintiffs simply allege that *some* of their underlying holdings were volatile. Allegations about the volatility of underlying investments within the SDH Funds say nothing about the overall volatility or performance of the SDH Funds.

Paraphrasing the Scottish poet and novelist Andrew Lang (attributed), Plaintiffs use statistics like an overserved tavern patron uses a lamppost – for support rather than illumination. The SDH Funds performed just fine, and Plaintiffs allege no loss from their investments in the SDH Balanced or Aggressive Funds. Plaintiffs' claims regarding the SDH Funds' volatile performance should be dismissed under Rule 12(b)(1).

### 2.      Plaintiffs Lack Standing to Bring Claims for Losses to Other Plans.

Plaintiffs also seek to bring claims on behalf of participants in plans other than the Pacific Office Automation Capital Accumulation Plan in which they were participants. They cannot, for two reasons:

First, Plaintiffs bring their principal claims pursuant to ERISA § 502(a)(2), which authorizes a cause of action by a "participant, beneficiary, or fiduciary" to recover "appropriate relief" under ERISA § 409, which in turn states that a fiduciary who breaches fiduciary responsibilities is liable to a plan for loss to "such plan." 29 U.S.C. § 1109(a). An ERISA § 502(a)(2) claim is a claim for loss to the plan itself, and not directly to individual participants. *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180 (2d Cir. 2021) ("a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done to the wronged plan."). Plaintiffs do not allege they were participants in any of the other plans, and

---

[14] Plaintiffs make passing reference the volatility of the SDH Conservative Fund, FAC ¶ 35, but that is irrelevant. As set forth *supra* at 12-14, Plaintiffs do not have standing to assert claims in connection with funds in which they did not invest.

Alta Trust Company's Motion to Dismiss        17

as such they lack statutory standing to bring claims for losses to any other plans. *See Acosta v. Pac. Enters.*, 950 F.2d 611, 617 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ("With respect to the plans in which he does not participate, Acosta does not claim that he specifically qualifies as one of the expressly designated persons permitted to sue a fiduciary for breach of duty.").

Second, because the plans themselves are the ultimate parties in interest, a participant in an ERISA plan must demonstrate to the court that he is a suitable representative of the plan as a whole, as well as the plan's other participants. "The claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010). Plaintiffs do not have standing to represent other plans. Even if they could represent other participants, those participants, in turn, would have to satisfy this Court that they were adequate representatives of their respective plans. The other participants are not parties, and thus they cannot represent their individual plans in this case.

**B.    Count I Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted.**

**1.    Count I Should Be Dismissed Against Alta Because Alta Cannot Be Liable in the First Instance for the Acts and Omissions of Its Appointed Investment Manager, SDH.**

In Count I, Plaintiffs allege that Alta and SDH "failed to employ a prudent and loyal process for selecting, monitoring, and reviewing the underlying investments held by the SDH Funds." FAC ¶ 91. But Alta, as trustee of the SDH Funds, delegated the selection and monitoring of the SDH Funds' underlying investments to SDH, and ERISA expressly states that Alta cannot be liable for SDH's decisions.

ERISA § 402(c)(3) states that a named fiduciary "with respect to control or management of assets," such as Alta, may "appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of a plan." 29 U.S.C. § 1102(c)(3). When such an investment manager is appointed, "no trustee shall be liable for the acts or omissions of such investment manager." 29 U.S.C. § 1105(d)(1). Plaintiffs allege Alta, as trustee of the SDH Funds and a named fiduciary, "has the authority to (and did) hire an investment manager," SDH, to "render advice regarding the SDH Funds." *Id*. ¶ 18. The SDH Funds "will be invested according to corresponding strategies and investment models developed and provided by" SDH. *Id*. ¶ 15.

Even if SDH committed any acts or omissions that resulted in ERISA liability (Alta denies there were any), Alta effectuated an ERISA § 402(c)(3) appointment and thus cannot be liable for the acts or omissions of SDH with respect to the SDH Funds' underlying investments. *See, e.g.*, *Lauderdale v. NFP Ret., Inc.*, No. 21-cv-301-JVS, 2022 WL 422831 at *7 (C.D. Cal. Feb. 8, 2022) (named fiduciary could not be liable for appointed investment manager's monitoring of CITs). Count I should be dismissed against Alta.

### 2.    Plaintiffs Cannot State a Viable Imprudence Claim by Merely Alleging the SDH Funds Had a Volatile Performance History.

Even if this Court does not dismiss Count I's breach of prudence claim against Alta for lack of fiduciary status, it should dismiss the claim on its merits. To state a plausible claim for breach of the duty of prudence, Plaintiffs must offer non-conclusory facts that Defendants did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C. § 1104(a)(1)(B).

Importantly, ERISA does not require fiduciaries to be the guarantors of any investment's results. This is because ERISA's fiduciary standard is one of conduct that focuses on the

Alta Trust Company's Motion to Dismiss        19

decision-making *process* used by fiduciaries, not *post hoc* results. *White v. Chevron Corp. ("White II")*, No. 16-CV-0793-PJH, 2017 WL2352137, at *13 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (ERISA's "test of prudence" asks whether fiduciaries, "at the time they engaged in the challenged [activity], employed the appropriate methods to investigate the merits of the investment)." Critical to this process-focused inquiry is recognizing that ERISA fiduciaries will often face "difficult tradeoffs" when making decisions, thus courts "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022).

Here, Plaintiffs do not plead any facts regarding the actual process Defendants used. Thus, they must allege sufficient facts from which this Court can reasonably *infer* that the fiduciaries' process was flawed. *See White II*, 2017 WL2352137, at *15 (dismissing fee allegations because complaint "fails to allege facts sufficient to support an inference that the Plan's fiduciaries acted imprudently in failing to monitor fees"); *Wehner v. Genentech, Inc.* ("*Wehner II*"), No. 20-CV-06894-WHO, 2021 WL 2417098, at *4 (N.D. Cal. June 14, 2021) (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718 (2d Cir. 2012)) ("[I]f the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant committed the alleged misconduct").

Plaintiffs' allegations fail to raise an inference that the process was flawed.

###### a. *Plaintiffs Fail to Compare the SDH Funds' Volatility to the Volatility of Meaningful Comparators.*

Plaintiffs' first claim that the SDH Funds' investment strategy and underlying holdings yielded volatile results and "delivered inferior risk-adjusted returns" in comparison to "better performing options." FAC ¶ 7. These allegations do not state an imprudence claim. To plausibly allege "a prudent fiduciary in like circumstances" would have acted differently, Plaintiffs "must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see also Smith*, 37 F.4th at 1167. To constitute a meaningful benchmark, a plaintiff must identify a comparator that has "similar aims, risks, and potential rewards" as the challenged fund. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1148 (N.D. Cal. 2022), *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022); *see also Wehner II*, 2021 WL 2417098, at *8 (a complaint must contain "factual allegations that compare the products' styles and strategies to support a finding of 'meaningful benchmark'").

Plaintiffs fail to meet this standard. Plaintiffs first compare the SDH Funds to four allegedly comparable funds, the Allspring Spectrum Aggressive Growth Fund, the American Funds Growth Portfolio, the MFS Aggressive Growth Allocation Fund, and the Thrivent Aggressive Allocation Fund. *Id*. ¶¶ 34, 66. Notably, these alternative funds are all in the "aggressive" category of target-risk funds, the most aggressive and risky on the target-risk spectrum. *Id*. ¶ 66. Accordingly, the alternative funds cannot serve as meaningful comparators for four of the five SDH Funds in the suite, including Nestler's investment, the Balanced Fund, because they do not share the same "aims and risks." *Anderson*, 579 F. Supp. 3d at 1147. Plaintiffs point to *no* alternative, comparable funds that performed less volatilely or better than the Balanced, Growth, Moderate, or Conservative Funds.

Moreover, Plaintiffs misleadingly use the Aggressive Fund as a benchmark for the *other funds* in the SDH suite, including the Balanced Fund. They alleges that the SDH Funds' "volatility had not been rewarded by way of superior returns." FAC ¶ 71. In support of this statement, Plaintiffs allege that the *Aggressive Fund* has achieved risk-adjusted returns below its benchmarks and peers, while saying nothing about the comparative returns of the other SDH Funds. *Id*. In other words, Plaintiffs use the SDH Fund with the riskiest (and therefore most volatile) investment strategy to allege that the *entire suite* was overly volatile in comparison to its performance. This false, "apples-to-oranges" comparison says nothing about how the Balanced, Growth, Moderate, or Conservative Funds performed relative to their risk, and cannot support a claim of imprudence. *See Wehner v. Genentech, Inc*. ("*Wehner I*"), No. 20-CV-06894-WHO, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (observing the plaintiff's source for the alleged "average" fee did not account for the same services provided to the plan at issue); *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022) (dismissing claim that failed to allege a "like-for-like comparison").

Plaintiffs' allegations also do not allege a plausible claim regarding the Aggressive Fund. The only mention in the First Amended Complaint to the actual returns of the Aggressive Fund, as opposed to the risk-adjusted returns, is that Jackson's investment in the Aggressive Fund allegedly lost 40% of its value from March 30 to September 30, 2024, and that was less than the Morningstar Aggressive Target Risk benchmark. FAC ¶ 38.  Plaintiffs do not compare the Aggressive Fund's performance over the last six months to that of another comparable aggressing investment fund, but to its "self-selected benchmark." Similarly, Plaintiffs compare the SDH Funds against their "stated benchmarks" with respect to volatility, alleging the SDH Funds had greater performance swings than the benchmarks. Compl. ¶¶ 34-35, 66, 68.

Alta Trust Company's Motion to Dismiss     22

Benchmarks are not investments, but "blended" market indices consisting of a "hypothetical portfolio of investment holdings" representing "a segment of the financial market."[15] There are no allegations that the market indices have the same "styles and strategies" as each SDH Fund they are measured against. *Wehner II*, 2021 WL 2417098, at *8 (dismissing claims based on comparisons to market indexes because plaintiff failed to allege how the indexes and the challenged funds "all share the same overall purpose and strategy"). Indeed, because market indices are meant to capture a snapshot of the *overall* financial market, courts have rejected their use as meaningful benchmarks for managed funds with specific, targeted strategies like each of the SDH Funds here. *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 n.4 (8th Cir. 2020) (rejecting argument that market index was a meaningful benchmark for a challenged fund); *Smith v. CommonSpirit Health*, CV 20-95-DLB-EBA, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021) (the "Russell [] Value Index is an unsuitable comparator"), *aff'd,* 37 F.4th 1160; *Beldock v. Microsoft Corp.* ("*Beldock II*"), No. C22-1082JLR, 2023 WL 3058016, at *2 (W.D. Wash. Apr. 24, 2023) (dismissing investment performance claim using S&P Target Date Indices as benchmark). This Court should do the same.

> **b.**    ***Plaintiffs Cannot State a Claim by Relying on Hindsight Performance Metrics Observed Over Short Periods of Time.***

Plaintiffs allege some of the SDH Funds, over three- and five-year periods, had greater standard deviations than their comparators, and therefore larger performance swings. FAC ¶ 34. They also allege the SDH Funds had higher Sharpe ratios and lower alpha metrics than comparators, and therefore "inferior risk-adjusted returns." *Id*. ¶¶ 68, 69. These allegations reduce to a claim that fiduciaries must select funds that consistently perform on a straight line.

---

[15] *See* Investopedia, *Market Index: Definition, How Indexing Works, Types, and Examples*, https://www.investopedia.com/terms/m/marketindex.asp

That is not what ERISA requires, and certainly not for a retirement plan that often has horizons that span many decades. Because fiduciaries are required to act prudently "under the circumstances then prevailing," backwards-looking performance allegations like Plaintiffs', made "with the benefit of hindsight," do not plausibly suggest that a plan fiduciary acted imprudently. *White II*, 2017 WL 2352137, at *20. Nor do brief performance snapshots of three to five years "conclusively point towards deficient decision-making[.]" *Smith*, 37 F.4th at 1167. Retirement plan investments are "long-term" investing, and short-term performance fluctuations are common. *Id.*; *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253-54 (5th Cir. 2008) ("retirement investing" involves a "long-term horizon"); *White II*, 2017 WL 2352137, at *20 (retirement plans often have "long-range investment strateg[ies]," which "plainly permit[]" the "common practice" of retaining investments despite short-term performance outcomes).[16]

At bottom, Plaintiffs' complaints about the SDH Funds' volatility amount to complaints that the SDH Funds performed *poorly*, which is insufficient on its own to allege a breach of fiduciary duty. FAC ¶ 7 (SDH Funds "delivered inferior risk-adjusted returns" in comparison to "better performing options").[17] Certainly, pointing "to an alternative course of action," such as a better performing comparator, is often "*necessary* to show a fund acted imprudently (and to

---

[16] Plaintiffs attempt to undermine the significance of these cases by alleging that Fidelity determined that the average tenure of the participants on its recordkeeping platform is 8.5 years. FAC ¶ 37. Even if true, participants cannot *access* their retirement plan accounts until retirement, and there is no reason fiduciaries should assume a *retirement plan* account is meant for anything other than long-term investing for *retirement*.

[17] Plaintiffs specifically point to the Aggressive Fund's five-year performance at the end of 2022, but fail to identify any comparator for that time frame. FAC ¶ 7. They also fail to mention that at the end of 2023, the Aggressive Fund delivered a one-year return of 45.81%, with a 5-year return of 10.20%. ECF No. 26-8, Aggressive Fund Disclosure at 1.

prove damages)." *Smith,* 37 F.4th at 1166.[18] But standing alone, it is insufficient to state a plausible claim. *Id.*; *see also Beldock II,* 2023 WL 3058016, at *3 ("[C]ourts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to" alternatives); *White II,* 2017 WL 2352137, at *20 (allegations of a fund's poor returns are "not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation"). This is true even when plaintiffs attempt to beef up performance allegations with the inclusion of so-called "risk-adjusted" performance metrics such as Sharpe ratios and alpha metrics, which Plaintiffs do here. *See, e.g., Anderson v. Intel Corp. Inv. Pol'y Comm. ("Anderson I"),* No. 19-CV-04618-LHK, 2021 WL 229235, at *7-8 (N.D. Cal. Jan. 21, 2021) (allegations of poor performance, "both in absolute terms and on a risk-adjusted basis[]" are "insufficient to state a claim for breach of the duty of prudence"); *Hall v. Capital One Fin, Corp.,* No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023) (dismissing claims premised on poor performance and Sharpe ratios because Sharpe ratios are "merely additional measurements of investment performance"); *Beldock II,* 2023 WL 3058016, at *3 (same).

> **c.  *Even If Hindsight Performance Metrics Were Sufficient to State a Claim, Plaintiff Has Not Alleged Any Facts that the SDH Funds Underperformed.***

Underperformance alone insufficient to state a fiduciary breach claim. But in any event, Plaintiffs allege no plausible facts that the SDH Funds in fact performed poorly. The disclosures for the Balanced and Aggressive Funds, the only ones in which Plaintiffs invested, reflect short- or long-term returns that either exceed or track their benchmarks. *See* ECF No. 26-9, Balanced

---

[18] For the reasons previously discussed *supra* at 14-17, Plaintiffs fail to adequately allege that the Balanced Fund actually had poor returns, and therefore diminished the balance of his retirement account.

Fund Disclosure at 1 (showing 1-year, 5-year and Since Inception performance that tracks or exceeds benchmarks); ECF No. 26-8, Aggressive Fund Disclosure at 1 (same). The Growth, Moderate, and Conservative Funds reflect similar returns. *See* ECF No. 26-10, Conservative Fund Disclosure at 1 (showing 1-year, 5-year and Since Inception performance that tracks or exceeds benchmarks); ECF No. 26-11, Growth Fund Disclosure at 1 (showing 1-year and Since Inception performance that tracks or exceeds benchmarks); ECF N0. 26-12, Moderate Fund Disclosure at 1 (showing 1-year, 5-year, and Since Inception performance that tracks or exceeds benchmarks).[19]

To create the illusion that the SDH Funds underperformed, Plaintiffs focus on volatility. Plaintiffs cite ERISA § 404(a)(1)(C), which they allege required Defendants to select investments that are sufficiently diverse "to minimize the risk of large losses." FAC ¶¶ 31, 40. By truncating the statutory provision, Plaintiffs mischaracterize its requirements. In the context of a defined contribution plan, ERISA § 404(a)(1)(C) does not require each individual investment option within a plan to diversify at a level that would be appropriate for a plan or participant account as a whole. ERISA § 404(a)(1)(C) provides in full that fiduciaries must act "*by diversifying the investments of the plan* so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so[.]" 29 U.S.C. § 1104(a)(1)(C) (emphasis added). As Plaintiffs acknowledge, the vast majority of investment funds used by 401(k) plans are, by their very nature, not diversified; they are concentrated as to asset class and

---

[19] On a Rule 12(b)(6) motion, this Court may consider documents "whose contents are alleged in the Complaint." *Terraza*, 241 F. Supp. 3d at 1066 (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Plaintiffs directly quote from and cite the SDH Funds' fact sheets in the Complaint. *See* FAC ¶¶ 54-59. This Court can therefore consider them on this motion to dismiss.

Alta Trust Company's Motion to Dismiss        26

strategy. *See* FAC ¶¶ 25-26. And in a defined contribution plan, each participant is able to diversify their holdings by allocating across multiple investment options.

Moreover, in an attempt to prop up this "failure of diversification" theory, Plaintiffs make misleading claims that focus myopically on particular underlying funds within the CITs. For example, and discussed *infra* at 31-32, Plaintiffs claim that the Baron Partners Fund had significant holdings in Tesla. FAC ¶ 43. But this does not raise a plausible inference of inadequate diversification, even at the level of the SDH Funds overall. As clearly described in the Balanced Fund fact sheet, the Balanced Fund targets only a 20% investment in Baron Partners as a whole, along with 14 other underlying funds across a wide variety of asset classes and strategies, *see* ECF 26-9 at 2, *each of which* generally hold dozens or even hundreds of other underlying stocks, bonds, and other investments. The Aggressive Fund, with its different objective, targets a 30% Baron Partners investment, among 8 other underlying funds. ECF No. 26-8 at 2. This variety is precisely why courts recognize that investment managers can, and do, vary in their strategies when selecting options for a prudent, diversified portfolio. *See, e.g.*, *DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) ("[A]ssertions of what a 'typical' balanced fund portfolio manager might have done . . . say little about the wisdom of [the manager's] investments, only that [the manager] may not have followed the crowd."); *Anderson*, 2021 WL 229235, at *10 ("ERISA requires that fiduciaries act prudently, but it does not require that fiduciaries mimic the industry standard when making investments.")

What's more, Congress and courts have explained that volatile, risky investments are part of a well-selected menu of options for 401(k) participants. ERISA is not a paternalistic statute that requires ERISA fiduciaries to make investment decisions for participants. As one court

Alta Trust Company's Motion to Dismiss          27

explained, directly exposing ERISA plan participants to volatile investments does not mean that an ERISA fiduciary acted imprudently or without proper investigation. *Saint Vincent Cath. Med. Centers v. Morgan Stanley Inv. Mgmt. Inc.*, No. 09-cv-9730 PKC, 2010 WL 4007224, at *4 (S.D.N.Y. Oct. 4, 2010), *aff'd sub nom. PBGC ex rel. St. Vincent*, 712 F.3d 705 (2d Cir. 2013). Even the DOL has acknowledged that volatile, risky investments are inherently included when a plan offers a suite of investment options that span the risk/reward spectrum.[20] Congress also explained that a menu of investment options offered to participants in a retirement plan must contain "a broad range of investments" for the individual participants and beneficiaries. ERISA-LH 9, 1974 WL 186650 (A.&P.L.H.), 48 (House Conference Report); *see also* ERISA-LH 5, 1973 WL 172970 (A.&P.L.H.), 23 (a "wide range" of investments must be made available to participants).

As this Court has specifically recognized, "[i]n order to establish a claim that a fiduciary has violated its duties under ERISA, the plaintiff must allege facts establishing the fiduciary's investment decisions—in the conditions prevailing at the time, and without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have made that decision as part of a prudent, whole-portfolio, investment strategy that properly balances risk and reward, as well as short-term and long-term performance." *Fisher v. Secchitano*, No. 3:18-CV-1639-JR, 2020 WL 1068873, at *8 (D. Or. Feb. 3, 2020), *report and recommendation adopted*, No. 3:18-CV-01639-JR, 2020 WL 1068068 (D. Or. Mar. 5, 2020), *aff'd*, 833 F. App'x 141 (9th Cir. 2021). Plaintiffs' allegations of poor performance do not allege any meaningful comparators and

---

[20] U.S. Department of Labor, *Target Date Funds – Tips for ERISA Plan Fiduciaries*, Feb. 2013, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf

cannot be based on the novel, meritless theory that more volatility requires higher returns.

Plaintiffs have not stated a claim.

### 3.     Plaintiffs' Critiques of the SDH Funds' Underlying Allocations Do Not Plausibly Suggest Imprudence.

Plaintiffs also ask this Court to infer an imprudent process because of the SDH Funds' allocations to two specific underlying funds, the Baron Partners Fund and the ARK Innovation ETF. FAC ¶¶ 40-43. Beyond generalizations that they contributed to the SDH Funds' volatility, Plaintiffs say nothing about how these allocations affected the overall performance of the SDH Funds and thus caused the SDH Funds allegedly poor performance. Consider the allegations about the ARK Innovation ETF, which was allegedly the "second largest underlying holding in four of the five SDH Funds." *Id*. ¶ 41. Plaintiffs allege that this "highly speculative" product had "predictably volatile results" because it had a huge spike in 2020 and large drops in 2021 and 2022. *Id*. But the period of 2020 to 2022 was an unpredictable anomaly, due largely to the COVID pandemic, which had massive and disproportionate effects on different segments of the investment markets. Indeed, data from sources cited in the First Amended Complaint demonstrate that the broad-based S&P 500 equity index lost over 18% in 2022 alone due largely to the COVID pandemic, and while broad equity benchmarks lost over 18%, technology stocks lost over 28%.[21]

---

[21] *See* Investopedia, "S&P 500 Average Return and Historical Performance" at https://www.investopedia.com/ask/answers/042415/what-average-annual-return-sp-500.asp; Morningstar, "5 Charts on Big Tech Stocks' Collapse" at https://www.morningstar.com/markets/5-charts-big-tech-stocks-collapse (noting that "Tech has been one of the worst-performing sectors of the year, largely pulled down by the poor performance of software companies. As of Dec. 9, the Morningstar US Technology Index was down 28.7% for the year, underperforming the Morningstar US Market Index, which is down 18.7%.").

But in fact, from October 2014 to the present, the ARK Innovation Fund has steadily risen in value. *See* ECF No. 24-1, Morningstar ARKK Performance Chart at 1.[22] It was only during that narrow window that it had a huge spike in value and then returned to relatively normal levels of increasing performance. *Id*. Plaintiffs' allegation that this was a predictably volatile investment is simply false. What's more, the disclosures for the ARK Innovation ETF show that its short- and long-term performance have generally tracked benchmarks or greatly exceeded them. *See* ECF No. 24-2, ARK Innovation ETF Fund Fact Sheet at 3.[23] Regardless of the particulars, fiduciaries are not required to predict pandemics or other future factors that may affect either the broad markets or particular market sectors, and *post hoc* claims of how fiduciaries might have acted differently with the benefit of hindsight do not support an inference that a particular investment strategy was poorly designed. *White II*, 2017 WL 2352137, at *20.

Plaintiffs also cherry-pick portions of an article critical of the ARK Innovation ETF. FAC ¶ 42. In the same article, the author admits, "[t]o be sure, Ark Innovation's return profile looks better in the long term. It began trading on Oct. 31, 2014, and returned 12% annualized from

---

[22] This Court may consider on a Rule 12(b)(6) motion facts subject to judicial notice "[that] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Terraza*, 241 F. Supp. 3d at 1066. The performance charts in Exhibit A are publicly available on Morningstar's website. Indeed, Plaintiffs cite other similarly publicly available Morningstar articles and charts throughout the First Amended Complaint, *see, e.g.,* ¶¶ 42, 61, and they cannot reasonably dispute the accuracy of similar publicly available Morningstar materials. Moreover, this Court may consider documents that a complaint "necessarily relies" upon. *Terraza*, 241 F. Supp. 3d at 1066. Without citing their source, Plaintiffs allege the ARK Innovation ETF "had predictably volatile results," and then cites returns from 2020-2022. FAC ¶ 41. Plaintiffs necessarily rely on published performance data, and this Court may consider that data on this motion to dismiss.

[23] This Court may consider these disclosures on a Rule 12(b)(6) motion because Plaintiffs directly references and quotes their contents in the First Amended Complaint. *See supra* n. 19.

then through Dec. 31, 2023, according to Ark."[24] Like Plaintiffs, the author of that hit piece focused on a period when ARK had a dramatic spike in returns followed by a drop to much more normalized gains.

With respect to the Baron Partners Retail fund, Plaintiffs allege that this "extreme single-stock concentration makes it too risky of an option to recommend for most mutual fund investors." FAC ¶ 43. But that fund was not a mutual fund option for the Plan's participants, and Plaintiffs do not allege that it was. As Plaintiffs acknowledge, it was one among many underlying investments in a *portfolio of holdings* within a suite of funds in a CIT. And the historic performance chart on the Baron Partners Retail fund shows that it increased 2,213.33% from 2003 to present. *See* ECF No. 24-3, Morningstar BPTRX Performance Chart at 7.[25] It also increased 269.25% from 2019 to present. *Id*. at 5. And, like the ARK Innovation ETF, according to the Baron Partners fund's disclosures, its performance generally tracked benchmarks or greatly exceeded them. *See* ECF No. 24-4, Baron Partners Fund Fact Sheet at 9.[26] Plaintiffs allege nothing to give rise to an inference that defendants acted imprudently and outside the "range of reasonable judgments" that fiduciaries may make. *Hughes,* 142 S. Ct. at 742.

Plaintiffs also complain about the Funds' allocation to "growth securities" generally. FAC ¶ 51. Again, aside from allegations of general volatility, Plaintiffs say nothing about how or whether these allocations caused any SDH Funds investment losses. Nor do they explain why the

---

[24] Dan Weil, *Data Shows Cathie Wood's Ark is One of the Worst Funds*, THESTREET (Feb. 8, 2024), https://www.thestreet.com/investing/stocks/why-cathie-woods-ark-is-one-of-the-worst-fund-groups-in-america.

[25] This Court may consider Morningstar's analysis of this fund on a Rule 12(b)(6) motion because Plaintiff directly references and quotes its contents in the First Amended Complaint, *see* FAC ¶ 43. *See supra* n. 19.

[26] This Court may consider these disclosures on a Rule 12(b)(6) motion because Plaintiffs directly references and quotes their contents in the First Amended Complaint, *see* FAC ¶ 44. *See supra* n. 19.

benchmark's allocations to "growth securities" represent the "upper limit" of what constitutes an allegedly prudent structure for a CIT. *PBGC ex rel. St. Vincent,* 712 F.3d at 724 (finding "unenlightening" allegations suggesting a retirement plan portfolio must consist of no more than a certain percentage of a certain type of investment). Indeed, the investment category "growth securities" is defined broadly as stocks in companies "believed to have high earnings growth potential." FAC ¶ 47. Yet Plaintiffs do not explain to what extent the "growth securities" in the SDH Funds are categorized similarly to the "growth securities" in the benchmarks. For these same reasons, courts have rejected similarly bare-bones "variance"-based allocation allegations. *PBGC ex rel. St. Vincent,* 712 F.3d at 724 (rejecting fiduciary breach allegations premised on a 10% variance between the retirement plan portfolio's investments in mortgage-backed securities and its benchmark's investments in the same). This Court should as well.

### 4.    The SDH Funds' Disclosures Do Not Suggest Imprudent Monitoring and Plaintiffs Do Not Allege Any ERISA Disclosure Violations.

Plaintiffs also take aim at the SDH Funds' disclosures. Compl. ¶¶ 53-61. Critically, Plaintiffs do not accuse Alta or SDH of violating any of ERISA's numerous specific disclosure requirements or any separate duty to disclose fund information. *See, e.g.*, 29 U.S.C. §§ 1021; 1024(b); 29 CFR § 2550.404a-5; *Terraza,* 241 F. Supp. 3d at 1071. Their gripe is that "Alta was not prudently monitoring the SDH Funds to ensure they complied with their stated guidelines." FAC ¶ 60. Plaintiffs allege that the disclosures for the Balanced Fund, stated "[t]he fund may be appropriate for investors seeking total return through moderate capital appreciation, current income and liquidity. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 6% to 8%, net of fees." *Id*. ¶ 56. The disclosures for the Aggressive Fund provide, "[t]he fund may be appropriate for investors seeking primarily capital

appreciation. Additional emphasis is on prudent overall diversification by asset class and investment style. Over a complete market cycle (3-5 years), the annual target rate of return for this fund is approximately 8% to 10%, net of fees." *Id.* ¶ 59. The other SDH Funds' disclosures were similar. *Id*. ¶¶ 55, 57-58. But Plaintiffs do not allege that the SDH Funds' strategy failed to comply with these stated objectives in any way. He merely alleges that the disclosures do not specifically reference the high concentration in growth and tech stocks, *id*. ¶ 53, and that the Aggressive Fund "push the bounds of risk." *Id.* ¶ 61. But this is not *inconsistent* with the disclosures, and thus cannot support an inference that Alta did not sufficiently monitor the SDH Funds to ensure they were being managed in line with the disclosures.

In fact, the actual disclosures belie Plaintiffs' allegations because they do disclose the percentage of investments in technology. Under the heading "Portfolio Sectors," the disclosures for each SDH Fund list the percentage of the fund invested in "technology," "large growth," "small growth," and "emerging market" stocks. *See* ECF Nos. 26-8 through 26-12, SDH Fund Fact Sheets at 1. And the disclosures also list the SDH Funds' specific underlying allocations and their percentages, including the Baron Partners Fund and the ARK Innovation ETF. *See id*. at 2. Investors curious about those specific allocations can visit those funds' disclosures, which in turn present a wealth of information regarding the managers' investment philosophy and goals, risk profile, and performance history. *See* ECF Nos. 24-2, 24-4. Indeed, Plaintiffs were aware of these disclosures because they cite and include statements from them in the First Amended Complaint. *See* FAC ¶¶ 41-44. This Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The SDH Funds' concentrations in growth and tech securities and investments in the Baron Partners Fund and the ARK Innovation ETF were disclosed.

Alta Trust Company's Motion to Dismiss        33

Finally, consider how facially absurd Plaintiffs' core theory is. They allege that an SDH Fund that is actually named "*Aggressive*" did not disclose to participants that it was, in fact, aggressive. Such a theory fails.

## VI.    COUNT II SHOULD BE DISMISSED WITH PREJUDICE

As discussed *supra* at 18-19, Count I should be dismissed against Alta because Alta appointed SDH as the funds' investment manager and delegated the authority to select and monitor the SDH Funds' underlying investments to SDH. In such circumstances, Alta has no potential ERISA liability for SDH's decisions. In Count II, Plaintiffs allege that Alta, in appointing SDH as investment manager, had a corresponding duty to monitor SDH's performance that Alta breached. FAC ¶ 97. While a delegating fiduciary may have a limited duty to monitor the performance of its delegate, claims that a fiduciary breached the duty to monitor are "derivative" of primary fiduciary breach claims. *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018). For the reasons already discussed, Plaintiffs' primary, underlying fiduciary breach claims in Count I fail. Accordingly, his "tag-along" monitoring claim against Alta fails with them. *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 856 (S.D. Ohio 2009); *see also Patterson*, 2018 WL 748104, at *6 (dismissing monitoring claim because "none of Plaintiff's other causes of action states a claim[]"); *Beldock I*, 2023 WL 1798171, at *8 (same). In addition, Plaintiffs allege no facts to support an inference that Alta violated its duty to monitor.

## VII.    CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed with prejudice.

Alta Trust Company's Motion to Dismiss      34

Dated: November 13, 2024

s/ *Richard J. Pearl*
Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
900 SW Fifth Avenue, 24th Floor
Portland, OR 97204
Telephone: (503) 323-9000

Richard J. Pearl (*pro hac vice*)
richard.pearl@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

Allison S. Egan (*pro hac vice*)
allison.egan@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-1982

Attorneys for Defendant Alta Trust Company

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **DEFENDANT ALTA TRUST COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** on the date indicated below by:

☐   mail with postage prepaid, deposited in the US mail at Portland, Oregon,

☐   hand delivery,

☐   facsimile transmission,

☐   overnight delivery,

☒   electronic filing notification.

If served by facsimile transmission, attached to this certificate is the printed confirmation of receipt of the documents generated by the transmitting machine.  I further certify that said copy was placed in a sealed envelope delivered as indicated above and addressed to said attorney at the address listed below:

David F. Sugerman
Nadia H. Dahab
Sugerman Dahab
101 SW Main St., Ste. 910
Portland, OR 97204
david@sugermandahab.com
nadia@sugermandahab.com

Paul J. Lukas, admitted *pro hac vice*
Brock J. Specht, admitted *pro hac vice*
Steven J. Eiden, admitted *pro hac vice*
Nichols Kaster, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
plukas@nka.com
bspecht@nka.com
seiden@nka.com

*Attorneys for Plaintiff and the Proposed Class*

Edward T. Decker
Miller Nash LLP
1140 SW Washington St., Ste. 700
Portland, OR 97205
edward.decker@millernash.com

*Attorneys for Defendant Sloy, Dahl & Holst, LLC*

DATED: November 13, 2024

s/ *Richard J. Pearl*
_____
Richard J. Pearl

Alta Trust Company's Motion to Dismiss      36